Ray G. OLANDER, Plaintiff–Appellant,

v.

BUCYRUS–ERIE·COMPANY, Defendant–Appellee.

No. 98–1541.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1998.

Decided July 21, 1999.

Philip C. Reid (argued), Cook & Franke, Milwaukee, WI, for Plaintiff–Appellant.

Michael Jacobster (argued), Jackson, Lewis, Schnitzler & Krupman, New York, NY, Michael N. Petkovich, Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, for Defendant–Appellee.

Before FLAUM, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Ray Olander sued his former employer, Bucyrus–Erie Company ("Bucyrus") for certain benefits under a supplementary pension benefit plan (the "Supp plan") which he had drafted for Bucyrus as its chief legal officer. The central issue in the case is whether a number of payments made to Olander in 1988 were properly excluded from the calculation of his benefits under the Supp plan. With respect to all but one of those payments, we affirm.

Olander worked for Bucyrus from 1961 to 1993. After a leveraged buyout of Bucyrus in 1988, he became vice chairman, chief commercial and legal officer, and a director of the company. He resigned as an officer and director in December 1992 and retired on March 1, 1993. At that time he was covered by the Bucyrus–Erie Salaried Employees Retirement Plan ("BSERP") as well as by the "new" Supp plan, intended as an additional benefit for higher-salaried employees. The new Supp plan was drafted by Olander himself and was effective October 1, 1988. The new Supp plan replaced the "old" Supp plan, which had covered Olander until it was terminated in February 1988.

Olander's annual pension benefit under BSERP was $110,240. Benefit payments under the (new) Supp plan, as in BSERP, were to be calculated on the basis of a participants' average monthly "compensation" in his five most highly compensated calendar years of employment during the ten years before retirement multiplied by the participant's total number of years of service. Olander's five most highly compensated years in the decade prior to retirement were 1988 through 1992. In 1988, he received several payments because the Bucyrus board of directors terminated then-standing plans or agreements between Olander and the company or bought back stock or options awarded to employees. These payments were as follows:

| Source | Payment to Olander |
|---|---|
| (1) Old Supp Plan | $218,933 |
| (2) Executive Deferred Compensation Agreement | $78,500 |
| (3) Employment and Consulting Agreement | $61,616 |
| (4) Stock Options | $11,947 |
| (5) Restricted Stock Bonus Plan | $146,700 |

The heart of the case is whether these payments constitute "compensation" for purposes of .BSERP or the Supp plan. The matter was in dispute since 1988, but on December 9, 1992, the BSERP Retirement Committee (the "Committee") determined that none of the items in question were "compensation" under BSERP, although the Committee had characterized the Restricted Stock as "additional compensation" in a 1987 memorandum to its directors. On December 14, 1992, the Bucyrus board of directors rendered the opinion that one-half of the payments from the Restricted Stock Bonus Plan, or $73,350, should be includable as compensation. The following Spring, after his March 1 retirement, Olander received a letter dated April 29, 1993, informing him that he was entitled to no benefits under the new Supp plan.

The disputed terms of the benefit plans at issue are these: (1) The BSERP plan

document unhelpfully defined "compensation" as "the total of base and supplemental compensation, including overtime and bonuses, received by the employee ...," and also including any employer payments to the "Becor Western Salaried Employees' Saving Plan in accord with a salary reduction agreement ..."; but excluding any "amounts not received by employee which are nevertheless included as income for income tax purposes ...." BSERP § 1.06.(2) Under the new Supp plan, the total amount of supplementary benefits was computed by subtracting the amount of benefit the participant was entitled to under BSERP from the amount the participant would be entitled to under BSERP if that were computed:

> (i) without giving effect to the limitations required by Section 415 of the [Internal Revenue] Code [the "Code"];
>
> (ii) without excluding from compensation as defined under BSERP any compensation which is deferred under
>
>> (1) any qualified nondeferred compensation agreement with [Bucyrus] (exclusive of the interest earned thereon) and/or
>>
>> (2) any qualified nondeferred compensation agreement with [Bucyrus] (exclusive of the interest earned thereon), including, without limitation, a cash or deferred compensation arrangement under Section 401(k) of the Code, and
>
> (iii) without excluding from compensation as defined under BSERP any compensation which is includable ... for purposes of BSERP by reason of any other Section of the Code or regulations thereunder.
>
>> However ... amounts not received by an employee which are nevertheless includable as W–2 income shall not be treated as compensation hereunder.

Supp plan § 3.1.(3) Olander also put into the new Supp plan a special provision pertaining to himself. It said that "[i]n determining the amount of any payment to be made to ... R.G. Olander pursuant to the [new Supp plan], the lump sum payment made to [him] in connection with the termination of the [old Supp plan] shall be offset against any payments made to [him] pursuant to the [new Supp plan]." *Id.* § 3.3. Finally, (4) the new Supp plan incorporated parts of BSERP by reference, stating that "[d]istribution shall be under the same form of payment and subject to the same conditions as is the benefit provided under BSERP ...." *Id.* § 3.2.

Discussions about how much, if anything, Olander was entitled to under the new Supp plan continued for several years. When these informal attempts to resolve the dispute failed, Olander filed this lawsuit. The magistrate judge, hearing the case by consent, and exercising jurisdiction under 28 U.S.C. § 636(4)(c)(1), pursuant to Fed.R.Civ.P. 73, declined to address Olander's request to amend his complaint with respect to the Restricted Stock payment and found on summary judgment that the Supp plan was governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that with one small exception,[1] Olander's payments were correctly calculated by the Committee, a plan administrator with proper discretion to construe the plan. Olander appeals, arguing (1) that the plan is excluded from ERISA and is governed by Wisconsin contract law, (2) that the Committee lacked discretion to construe the Supp Plan, and (3) that, if it had such discretion, it nonetheless acted arbitrarily and capriciously in excluding from the calculation of his benefits the contested five payments. Olander also argues (4) that the magistrate judge abused his discretion in declining to address his request to amend his complaint.

This court reviews a grant of summary judgment de novo, construing the evidence in the light most favorable to the non-

---

1. The magistrate judge found that $1,666.66 in Deferred Executive Compensation deferred from 1988 was compensation for BSERP purposes.

moving party. B*ragg v. Navistar International Transp. Corp*, 164 F.3d 373, 376 (7th Cir.1998). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed R. Civ. Pro. 56(c). The facts in this case are not in dispute and the only questions to be addressed are legal ones.

The parties disagree about the applicable law and consequently, about the nature of our jurisdiction. At issue in part in this dispute is the standard of review. According to Bucyrus, the new Supp Plan is an ERISA "top hat" plan, an unfunded plan the employer maintained "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(3), & 1101(a). Accordingly, it is subject to ERISA's enforcement provisions even if it is excepted from ERISA's vesting, participation, funding, and fiduciary rules. *See In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir.1996). In the ordinary case ERISA preempts state law. 29 U.S.C. § 1144(a); *see Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir.1998). Moreover, in an ERISA plan which gives the fiduciary discretion to interpret the plan or to determine eligibility for benefits, the fiduciary is entitled to great deference and his determinations will be sustained if reasonable. *Firestone Tire and Rubber v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Olander, in contrast, contends that the Supp plan is an "excess benefit plan" altogether exempted from ERISA. An excess benefit plan is one the employer maintains "solely for the purpose of providing benefits for certain employees in excess of the limitation on contributions and benefits imposed by Section 415 [of the Code] on plans to which that section applies without regard to whether the plan is funded." 29 U.S.C. § 1002(36). When an excess benefit plan is unfunded, none of the provisions

of ERISA apply. Id. § 1003(b)(5); *Gamble v. Group Hospitalization & Medical Services, Inc.*, 38 F.3d 126, 128 (4th Cir. 1994). In that case, ERISA would not preempt and, Olander argues, we would apply Wisconsin contract law, *see, e.g., Gallione v. Flaherty*, 70 F.3d 724, 729 (2d Cir.1995), undisputedly the state law that would apply if any did. Under Wisconsin law, a court is to construe a contract de novo, without deference to the interpretation of a party. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis.2d 224, 564 N.W.2d 728, 731 (1997).

The magistrate judge concluded that the Supp Plan is governed by ERISA. We concur, but doubt that the ultimate outcome of the case would be different were we to apply Wisconsin law. The magistrate judge reasoned that an excess benefit plan is one maintained *solely* in order to avoid the contribution and benefits limits imposed by § 415 of the Code. The Supp Plan, however, was not maintained solely to avoid the § 415 limitations. By its own terms, the Supp Plan has three purposes: (a) avoiding the § 415 limitations, Supp plan § 3.1(a)(i); (b) providing benefits for deferred compensation received but not included for benefits calculation under BSERP, *id.* § 3.1(a)(ii); or (c) providing benefits for compensation not includable under BSERP by reason of any other provision of the Code. *Id.* § 3.1(a)(iii). Only one of these three purposes involves the § 415 limitations. Since the Supp plan had other purposes, the magistrate judge concluded that it was not an excess benefit plan within the meaning of 29 U.S.C. § 1002(36). We read the statutory test for whether a plan is an excess benefit plan as turning on the purposes of the plan in general rather than on the specific way the plan applies to a party, and therefore conclude that the magistrate judge's interpretation was correct. Under the plain language of the statute, that should decide the issue.[2]

2. *See Lexington Ins. Co. v. Rugg & Knopp,* 165 F.3d 1087, 1091 (7th Cir.1999) (plain meaning governs in statutory interpretation); *Newsom v. Friedman,* 76 F.3d 813, 819 (7th Cir.

■ Olander argues that the way the statute applies to his particular case makes the purpose of the Supp plan for him to be solely to avoid the § 415 limitations. But he offers no good reason to treat a plan as an excess benefits plan because it has the sole effect in a particular party's case of avoiding the § 415 limitations rather than because it was maintained by the employer for that sole purpose. The latter is the most natural reading of the statutory language. *See* 29 U.S.C. § 1002(36) ("The term 'excess benefits plan' means a plan maintained by the employer for the sole purpose of providing benefits ... in excess of the [§ 415] limitations."). Even if a plan with other purposes has only the effect of avoiding the § 415 limitations in an individual's case, that does not mean that avoiding those limitations was the sole purpose for which the employer maintained the plan, which is the decisive consideration here.

By way of reply, Olander adverts to the "separability" provision of § 1002(36), under which "a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer is maintained for such a purpose[, *i.e.*, to avoid the § 415 limitations] ... shall be treated as a separate plan which is an excess benefit plan." Olander urges that Section 3.1(a)(i) of the Supp plan, which does address the § 415 limitations, be read as a separable plan which is an excess benefit plan. He cites *Petkus v. Chicago Rawhide Mfg. Co.*, 763 F.Supp. 357 (N.D.Ill.1991):

> The concept of separability suggests to us that the exemption question is not so much one of form, but of function. The implicit purpose of the exemption is to exclude from federal jurisdiction cases that only involve claims under a pension

plan for benefits that exceed the Section 415 limitations.... [T]he question ... here is whether this case could result in a claim for benefits other than any benefits that may be paid in excess of the Section 415 limitations .... [Plaintiff argues that his] claim ... under the [plan] is governed only by the provision for benefits in excess of the Section 415 limitation [and this court agrees].

*Id.* at 360. Because Olander claims that in his particular case, the Supp plan could not pay any other benefits that might be paid him in excess of the § 415 limitations, he thinks that Section 3.1(a)(i) of the Supp plan, treated as a separate plan, would qualify as an excess benefit plan wholly exempt from ERISA.

We need not decide the separability question here because Olander's basic premise, that there was no amount payable to him under the Supp plan below the § 415 limitations, is false. An excess benefit plan is one maintained *solely* to avoid the § 415 limitations. Even under Olander's theory, if a plan were to pay any benefits which were below those limits in a particular case, it would not be an excess benefits plan. The Supp plan would pay Olander benefits below those limits and so would not be an excess benefit plan even on Olander's terms.

Explaining this requires some tedious detail. A participant's annual benefits under a defined benefit plan exceed the limitations of 26 U.S.C. § 415(b)(1) if they are more than either $90,000 or 100% of the participant's average compensation for his highest three years. The $90,000 figure, the pertinent figure here, is subject to cost of living adjustments, *id.* § 415(d)(1)(A),

---

1996) ("The plain meaning of legislation should be conclusive."). The extremely unusual "exception to the plain meaning rule [is] the 'rare case[ ] [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *Pittway Corp. v. United States*, 102 F.3d 932, 936 (7th Cir.1996) (*citing United States v. Ron Pair Enterprises, Inc.*, 489

U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). Olander does not argue that a literal reading would " 'lead to an absurd result or thwart the purpose of the overall statutory scheme.' " *Castellon–Contreras v. INS*, 45 F.3d 149, 153 (7th Cir.1995) (*citing Born v. United States*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991)).

and was adjusted to $115,641 in 1993, the year Olander retired. Moreover, the limitation is increased after Social Security retirement age at 65; Olander retired at age 66, and his limit that year would have been $134,545. Olander's annual BSERP benefit, however, is $110,240. Any Supp plan payment between $110,240 and $134,-545 would be less than Olander's § 415 limitations, and thus even if we were to consider Section 3.1(a)(i) of the Supp plan standing alone and as applied to Olander's individual case, it would not be, on Olander's own terms, for the sole purpose of avoiding the § 415 limitations.

■ Olander is nothing if not resourceful, however. He invites us to read the express reference to § 415 of the Code in the ERISA definition of an excess benefit plan, *see* 29 U.S.C. § 1002(36), to "incorporate by reference" a separate $200,000 limit on certain qualified plan contributions in § 401(a)(17) of the Code. According to Olander, § 415(k) states that a "defined benefit plan" is a plan that, among other things, is "a plan described in section 401(a), which includes a trust which is exempt from tax under section 501(a)," and one such tax-exempt trust is a "qualified trust" which, at the effective date of Olander's retirement in 1993, had a $200,000 contribution level. 26 U.S.C. § 401(a)(17) (superseded). Olander argues that he did not reach this contribution level. But as the Fourth Circuit remarked in *Gamble*, relying on a legal analysis by one of the parties in that case:

> [T]he ERISA provision which authorizes ... unfunded excess benefit plans speaks only of arrangements which provide benefits and/or contributions which are in excess of the allowable Section 415 limits. For any number of reasons, the $200,000 compensation ceiling was not placed on Section 415 of the Internal Revenue Code. Instead, it is found in Section 401(a)(17). Consequently, nei-

ther the ERISA definition of excess benefit plan, nor the plan ... address themselves to benefits or contributions which are lost not because of Section 415 limits, but as a result of the new compensation dollar limit.

38 F.3d at 131. In any case, it is a further stretch than we will make to read into an ERISA provision which refers to the *output* limitations in § 415(*b*) of the Code one of a number of *input* limitations in *401(a)(1)* referred to in 415(*k*) of the Code. Olander gives no reasons from legislative history, policy, or text which would incline us to thus strain the straightforward language of the excess benefit provision, 29 U.S.C. § 1002(36). The plain and natural reading of that provision refers to the limitations in §§ 415(b)-(c),[3] and we so construe it. Because Olander's argument that Section 3.1(a)(i) of the Supp plan is a separable excess benefits plan would therefore fail on his chosen terms, we need not decide whether that section is a separable plan. ERISA then preempts any state law claims and, under the "top hat" provisions, ERISA standards of review apply in this case.

■ We now consider whether the magistrate judge erred in applying the "arbitrary and capricious" standard of review to the determinations of the Committee that the five contested payments were not "compensation" under BSERP and so could be excluded from the calculation of Olander's entitlements under the Supp plan. The Supreme Court has held that judicial review of benefit eligibility determinations under an ERISA plan will vary with the fiduciary's power to construe the terms of the plan: when the fiduciary lacks such discretion, judicial review is de novo; when the fiduciary has such discretion, review is deferential and the interpretation of the fiduciary is overturned only if it constitutes abuse of discretion. *Morton v. Smith*, 91 F.3d 867, 870 (7th Cir.1996)

---

**3.** 26 U.S.C. § 415(b) contains the limitations on benefits (outputs); § 415(c) describes the limitations on contributions (inputs).

(citing *Bruch*, 489 U.S. at 110–115, 109 S.Ct. 948).

The magistrate judge held that the Committee had the sort of discretion which triggers deferential review because, under BSERP, it is clear that the Committee has the appropriate discretion and the Supp plan provides that "distribution of [Supp plan benefits] shall be under the same form of payment and subject to the same terms and conditions as is the benefit provided under BSERP...." § 3.2. Olander, who drafted this language himself, argues that "distribute" refers only to the manner of payment and not to the amount of benefit. One can only "distribute" what has already been calculated, he argues; and in any case he invites us to apply the maxim *expressio unius est exclusio alterius, see Petrilli v. Drechsel*, 910 F.2d 1441, 1447 (7th Cir.1990) because the Supp plan expressly gives the Committee discretion over distribution but is silent on benefits calculation, the Committee has no such discretion over benefits calculation.

■ This is unpersuasive. We read the language of a plan "in an ordinary popular sense as would a person of average intelligence and experience." *Andersen v. Chrysler Corp.*, 99 F.3d 846, 857 (7th Cir. 1996). What would constitute discretion over distribution only, without any discretion over calculation, Olander does not say. Perhaps it would be discretion to decide whether benefits were to be paid by check or in small unmarked bills, or on Thursdays rather than Fridays. Why Olander, an experienced senior legal officer and the person who drafted the language, would have thus cabined the discretion of the Committee he does not explain, although no one would be in a better position than he to support his point by revealing its rationale. A person of average intelligence and experience would have no reason to resist the plain meaning of the language, that is, that the Committee had discretion with regard to the terms and conditions of the distribution, including what payments to plan participants count as compensation for the purposes of calculating plan benefits. We remark that even if we were to consider the plan language under ordinary common law contract principles, this would be the plain meaning of the language which Olander himself drafted and to which he agreed.

■ Finally, we consider whether the Committee abused its discretion in deciding that none of the five contested payments were "compensation" under BSERP and that all were therefore excluded from calculation of Olander's entitlements under the Supp plan. "Arbitrary and capricious" review is extremely deferential, the least demanding form of judicial review. *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir.1996). Under this standard of review, a determination about eligibility for plan benefits will be reversed only if the fiduciary abused his discretion, that is, only if his determinations "were not just clearly incorrect but downright unreasonable." *Fuller v. CBT Corp.*, 905 F.2d 1055 (7th Cir.1990). In view of the high degree of deference accorded the fiduciary in this matter, the Committee's determinations with respect to four of the five contested payments were not abuse of discretion.

(1) The $218,933 payout from the old Supp plan, Bucyrus says, was not compensation because it was an advance of money which would have been paid Olander at retirement and including it for purposes of BSERP would have resulted in an unintended windfall for Olander, using one benefit to build up another. Olander replies that the payments were intended as an incentive not to retire or leave and, furthermore, that the danger of "pyramiding" was addressed in Section 3.3 of the Supp plan, which provided that the payout for the old Supp plan was to be offset against any new Supp plan payments. Even if the offset addresses the windfall argument, however, the Committee's determination that the payout from the old

Supp Plan was an advance and not an incentive payment was not unreasonable.

(2) The Committee determined that the $78,500 payout Olander received in connection with the Executive Deferred Compensation Agreement was not BSERP "compensation" because $76,833.34 of the total was deferred from 1982–1987, and was thus outside the employee's five highest-earning years specified in the plan documents as the basis of calculation of Supp plan benefits. The Committee also excluded $1,666.66 under this agreement which was deferred from 1988, within the five-year period, and the magistrate judge found that to be an abuse of discretion; Bucyrus does not cross-appeal this ruling. Olander's reply is that he received the money in 1988, and money received in the five-year period should be counted as compensation for that period because BSERP § 1.06 defines "compensation" as "compensation ... received by the employee ...." But the Committee was not unreasonable to read this as meaning that to be compensation under this section, the payment had to be received, but that the deferred compensation was compensation for the period in which it was earned and not in which it was received.

(3) The Committee also determined that the $61,616 Olander received in 1988 to extinguish his rights under an employment consulting agreement was not compensation because he never performed any services under the agreement, so there was nothing for which it could be compensation. Olander says that payment for extinguishment of his valuable contractual rights was compensation for them. Normally one bald assertion is as good as another—but not when one party carries the burden of persuasion that the other party's determination was unreasonable.

(4) Olander was paid $11,947 in exchange for options to purchase company stock. Bucyrus had granted these options to Olander before 1988 and they were not granted as consideration or payment for any services Olander had performed for Bucyrus in 1988 or thereafter, so the Committee determined that counting the Stock Options payout as compensation under BSERP could give rise to a windfall for Olander. Olander argues that this payment was included in his 1988 W–2, so it must have been compensation for that year. However, he does not address the Committee's plausible reasoning, so we find no abuse of discretion.

The situation is different, however, with respect to (5), the $146,700 Olander received in exchange for Bucyrus restricted stock. Bucyrus argues that this payment was compensation for services rendered in 1985–86, outside the five year high-pay window, and so not "compensation" under BSERP.[4] But the Committee expressly stated in a 1987 memorandum to the board of directors that the shares were an incentive for key executives and "additional compensation" in lieu of a bonus. The value of the shares was not reflected in Olander's W–2 in 1985 or 1986 nor included in calculating his retirement benefits under the old Supp plan in 1988. The shares could have been forfeited had he retired or been fired before he received the stock in 1988.

Bucyrus wants to have it both ways— the Restricted Stock buyout, it says, should not count for purposes of BSERP and the new Supp plan, but neither did it count for the old Supp plan payout in 1988. Since, however, the payment was "compensation" by Bucyrus' own reckoning, it must have been compensation under one or another of these calculations. In this regard the Committee's determination was "downright unreasonable" and so an abuse of discretion. The magistrate judge should ascertain whether Olander is entitled to any benefit payments under the new Supp plan, counting the Restricted Stock pay-

4. As noted, the Bucyrus board of directors differed with the Committee's determination that none of the Restricted Stock buyout was compensation and opined that half of it was. However, Bucyrus now proceeds on the theory that the Committee was right.

ment as "compensation" for BSERP purposes. In view of this outcome, we need not consider whether the magistrate judge erred in declining to consider Olander's motion to amend his complaint, which related to this issue.

We REVERSE and REMAND with respect to the Restricted Stock payment; we AFFIRM in all other respects.