In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2618

PETER G. MEIN,

Plaintiff-Appellant,

v.

CARUS CORPORATION, a corporation,
M. BLOUKE CARUS, and CARUS CORPORATION
CAPITAL ACCUMULATION PLAN,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99-C-8269--Harry D. Leinenweber, Judge.

Argued January 12, 2001--Decided February 21, 2001

Before RIPPLE, ROVNER, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  Common sense takes a beating in this suit, brought under the Employee Retirement Income Security Act, 29 U.S.C. sec. 1001 et seq. What should have been a relatively simple matter has been dragging on for a decade. Peter G. Mein is attempting to force his former employer, Carus Corporation, to make certain contributions to his 401(k) plan, and whether he can succeed or not would seem to be a relatively easy question.

In 1979 Carus Corporation adopted a pension plan called the Carus Corporation Capital Accumulation Plan. As part of the plan, Carus contributed 4% of each employee's compensation into an account for employees. The plan defined "compensation" as the total of all amounts received for services rendered, includable in gross income for income tax purposes.

In 1985 Mein and Carus entered into an employment agreement which provided for the creation of a chemical department known as Special Products Division, of which Mein was appointed vice-president. He was to earn a royalty on products sold and was provided with what he calls a phantom equity interest in the division.

A difference of opinion arose about the meaning of the agreement, and the parties went to arbitration. A settlement was reached on November 9, 1988, under which Carus agreed to pay Mein royalties through December 31, 1989, on the same percentage basis as under the employment agreement. So long as Mein was a Carus employee, royalty payments were considered compensation. In addition, Mein released any equity interest he had in the Special Products Division, in exchange for which Carus agreed to pay him $575,000 in four installment payments, which accrued interest from November 9, 1988. Ultimately, Mein received payments totaling $643,335.98. Carus gave Mein W-2 forms which included these payments in his gross income.

In 1991 the lengthy dispute with which we are concerned began when Mein wrote to Carus asking whether the equity payments he received under the settlement agreement were treated as eligible compensation for his 401(k) plan. Over the next 2 years Mein received letters and memos from Carus officials telling why they were not eligible compensation. One memo said that the funds he received under the settlement agreement were a "severance settlement" and not compensation for purposes of the 401(k) plan. Another said that the royalty payments were eligible compensation but that the equity payments were not. Another informed Mein that the payments were for the release and settlement of the equity portion of the employment agreement, not for employee services; therefore, they were not compensation under the 401(k) plan.

In 1994 Mein filed a state court breach-of-contract case seeking to compel Carus to make the disputed payments into the 401(k). The court dismissed the suit without prejudice on the basis that the case presented an ERISA claim; for that reason, the court concluded that it lacked jurisdiction. The Illinois appellate court agreed that it was an ERISA case but concluded that it was the type of ERISA case over which there was concurrent federal-state jurisdiction. The case was remanded so that Mein could amend to properly frame his claim as one arising under ERISA. After the amendment to the complaint, Mein encountered yet another problem: the trial court dismissed the case based on Mein's failure to exhaust administrative remedies as required under ERISA. The Illinois appellate court affirmed, saying that Mein had not shown that administrative remedies would have been "clearly useless." The court rejected Mein's contention that the plan was not the proper forum for the relief he sought and his view that his is a claim against the company for not making the contributions and that

the plan's role is merely to receive contributions and pay benefits.

Mein then undertook what he perceived to be a rather fruitless administrative appeal, and, sure enough, on August 3, 1999, James Wilkes, writing as trustee for the plan, informed him that the "Plan Administrator" had reviewed his claim and denied it on the basis that the payments were made under the settlement agreement, which terminated his employment agreement and his equity interest in the division; consequently they were not in exchange for "services rendered" and were not compensation under the plan. Alternatively, Wilkes said, the payments were closer to severance or post-employment pay and, for that reason as well, were not compensation.

In 1999, nearly a decade after the dispute began, Mein filed the present district court complaint seeking relief under ERISA, naming as defendants Carus Corporation and M. Blouke Carus, a minority shareholder. Mein claimed that the terms of the plan required the Carus Corporation to contribute 4% of the $643,336 into his 401(k) retirement account. He sought an order requiring the company to make the contributions. The defendants moved to dismiss the complaint on the basis that they were not appropriate defendants to a claim for ERISA benefits--that the plan, which was not named as a defendant, was in fact the only proper defendant. At a hearing, the district judge granted the motion but gave Mein leave to refile. Perhaps anticipating another setback, at the hearing Mein was prepared with an amended complaint naming the two previous defendants and adding the Carus Corporation Capital Accumulation Plan as a defendant. District Judge Harry D. Leinenweber let him file the amended complaint but said the original defendants remained dismissed. In spite of that, Mein insisted that he had no claim against the plan but only against the employer which promised to make contributions to the plan.

Taking Mein at his word, the defendants filed a motion to dismiss, saying that the plan was the only appropriate defendant, that Mein was not seeking relief against it, and that Mein failed to allege that the terms of the plan entitled him to relief or that the plan violated his rights under ERISA. Mein, in turn, filed a motion for summary judgment, in which he stated,

It is true that Mein seeks no relief from the Plan. Carus Corporation and its guarantor, Blouke Carus, are the only entities from whom Mein seeks relief. The Carus plan is merely the conduit through which employer contributions to the employee's account are made and ultimately

distributed to the employee.

The defendants' motion to dismiss was granted and Mein appeals.

Mein's insistence that he seeks relief only from the corporation itself and from Blouke Carus might seem to complicate our analysis, as might the defendants' professedly firm belief that in this circuit the plan can be the only defendant. But the latter proposition is much less firmly established than the defendants would have us believe. And Mein's problem is not that he has not named the plan as a defendant, because, reluctantly, he has; his problem is that he insists that he does not seek any relief against the plan./1 Mein's belief that the plan cannot offer him the relief he seeks overlooks the fundamental fact that it is the plan administrator that has the power to determine what the plan provisions mean, including, we note, what compensation, as defined in the plan, means. What makes all of this doubly absurd as a matter of common sense, if not of law, is that, in this case, it is the corporation which is the plan administrator--which, though it sounds a little fishy, is legal. Unlike the common law of trusts, ERISA allows the employer to be the plan administrator. 29 U.S.C. sec. 1002(16). In fact, in Varity Corp. v. Howe, 516 U.S. 489 (1996), the Court allowed employees to bring a breach of fiduciary suit against a company in its role as plan administrator.

As to the proper defendant against whom to make an ERISA claim, it may ordinarily be true that, especially in a suit for benefits, a plaintiff should name the plan as a defendant. Title 29, U.S.C. sec. 1132(d), provides that a plan may sue or be sued and provides that

[a]ny money judgment under this title against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this title.

In Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482 (1996), in which a plaintiff had sued a nurse who worked for a health plan, we said that any money judgment was enforceable only against the plan and not against any individual unless her liability was established in her individual capacity. In that context, the only proper defendant was the plan. However, in Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (1997), we considered whether the plaintiff should be out of court because she sued the wrong entity--the employer rather than the plan itself.

We said:

It is true that ERISA permits suits to recover benefits only against the plan as an entity, [citing Jass], but we are not inclined to make this case known for that rule. ComEd [the employer] did not pursue summary judgment on this basis. While we can affirm the judgment of the district court on any basis supported by the record, [citation omitted], the exact relationship between ComEd and the plan is not clearly set out. The plan documents themselves refer to ComEd and the plan nearly interchangeably, and the company designated itself as the plan's agent for service of process. So it is not surprising that Rosemary sued ComEd instead of the plan.

We have allowed cases to proceed with the company as the named defendant. See, e.g., Olander v. Bucyrus-Erie Co., 187 F.3d 599 (7th Cir. 1999), and Anstett v. Eagle-Picher Industries, Inc., 203 F.3d 501 (2000). While it is silly not to name the plan as a defendant in an ERISA suit, we see no more reason to have this case stand starkly for the proposition that the plan is always the only proper defendant any more firmly than did Riordan.

In fact, in this case there may be less reason. The corporation and the plan are, if anything, even more closely intertwined in this case than in Riordan. When the advantages of the plan are set out in the summary plan description, the pronouns we and our are used and seem clearly to refer to the company, not the plan: e.g., "Our matching contributions give you an immediate return on the amount you save. We will make a matching contribution equal to 25% of your savings contributions." Throughout the description, as in Riordan, the close relationship between the corporation and the plan is evident. Also as in Riordan, the designated agent for legal process is the corporation. Service of process, the description says, can also be made on the plan administrator or a trustee. As we have said, the plan administrator in this instance is the Carus Corporation itself. A section of the actual plan document at Section 12.01 gives the plan administrator "complete control of the administration of the Plan." Also, the plan trustee, with whom Mein most often communicated, was James C. Wilkes, who, although at least on some occasions, signed letters as trustee for the plan, also used Carus Corporation stationary which indicated that he was vice-president of human resources for the corporation. Under these circumstances, given Riordan, and given the fact that Mein actually does name the plan as a defendant, we decline to toss out his

claim for contributions from the corporation on the basis that he thought he was not making a claim against the plan itself. After all, it has some logical appeal to say that requiring an employer to make a contribution should be a claim against the employer, somewhat in the manner of claims brought by unions to enforce contributions to multi-employer plans, under 29 U.S.C. sec. 1145.

We recognize, however, that the problem with that contention is that the issue before us involves a matter of plan interpretation, and plan interpretation is a matter for the plan administrator, making the plan a proper party. Here the problem is that although Mein has named the plan as a defendant, he insists, we repeat, on maintaining that he does not have a claim against the plan.

It hardly matters. Under the Carus plan, the plan administrator is the corporation. We fail to see how the plan or the corporation is harmed by Mein's insistence that he is not making a claim against the plan. It is the plan administrator, i.e., the corporation, that gets to decide what the plan requires. More importantly, in spite of himself, Mein got it right in his amended complaint when he alleged that the "Carus Corporation Capital Accumulation Plan is hereby made a party defendant to assure that the court may grant complete relief to the parties." Because of this allegation and the close relationship between the plan and the corporation, we find that Mein avoided pleading himself out of court.

On the merits of his claim, we note that the plan provides that the company will contribute 4% of compensation. Compensation is defined at Section 1.09 of the plan as

[t]he total of all amounts received during the Plan Year by the Employee from the Employer for services rendered to the Employer which is currently includible in gross income for income tax purposes. In addition, Compensation shall include all elective contributions made by the Employer on behalf of an Employee which are not currently includible in gross income of an Employee under Code Section 401(k).

Carus Corporation is required to make the contribution only if the payment is determined to be compensation. The entity which gets to decide what compensation means is the plan administrator, which, as we have said several times already, is the Carus Corporation:

Not in limitation, but in amplification of the

foregoing, the Plan Administrator has the power to construe the Plan and to determine all questions that may arise under the Plan, including all questions relating to the eligibility of Employees to participate in the Plan . . . . The Plan Administrator's decisions upon all matters within the scope of its authority shall be final.

When a plan gives the administrator discretion to interpret the plan, his interpretation is entitled to great deference and the determination will be sustained if it is reasonable. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989).

The plan administrator determined that the payment of the $575,000, plus interest, was not compensation for services rendered, as required under Section 1.09 of the plan, but rather was for the release of Mein's equity interest in the Special Products Division. The administrator also determined that the "lump sum settlement payments you received from Carus Corporation during 1989 to 1991 were made pursuant to the Release and Settlement of Employment Agreement, which provided that your prior employment agreement with Carus Corporation was 'terminated.'" It also provided that Mein surrender "any equity interest, actual or 'phantom,' which he may have in the Special Products Division." In addition, the administrator determined that because the payment was in the nature of severance pay, it was specifically excluded from compensation. This interpretation cannot be labeled as unreasonable. For this reason, the judgment dismissing the complaint is AFFIRMED.


/1 Ironically, the defendants' argument that the amended complaint must be dismissed because Mein is not making a claim against the plan relies on matters outside the pleadings: Mein's oft-repeated insistence that his claim is not against the Plan. Because both parties rely on matters outside the pleadings, and because Mein moved for summary judgment in the district court, our attempt to sort out the issues in this case will be based on the entire record before us.