In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2835

Reg G. Garratt,

Plaintiff-Appellant,

v.

James E. Knowles, Nancy Knowles,
Charles L. Knowles, Katherine Knowles
Strasburg, Margaret Knowles Schink,
E. Lawrence Keyes, R. Euguene Goodson,
Defrees & Fisk and John W. Hupp,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 764--David H. Coar, Judge.

Argued February 23, 2001--Decided March 28, 2001

Before Flaum, Chief Judge, and Ripple and Williams,
Circuit Judges.

Flaum, Chief Judge.  Reg G. Garratt brought suit
in the Circuit Court of Cook County, Illinois,
alleging that the Board of Directors of Knowles
Electronics, Inc., as well as their attorneys,
had violated state law by amending a Supplemental
Executive Retirement Plan ("SERP") to escape from
paying Garratt approximately $1.85 million. The
defendants removed the case to the District Court
for the Northern District of Illinois on the
ground that Garratt's action was of the type over
which the federal courts exercise exclusive
jurisdiction under 29 U.S.C. sec. 1132(e)(1).
Garratt filed a motion to remand the matter to
state court which the district court denied.
Thereafter, the district court dismissed
Garratt's complaint, noting that under the
Employee Retirement Income and Security Act of
1974 ("ERISA"), 29 U.S.C. sec. 1001 et seq., a
suit to recover benefits is properly brought only
against the plan itself, and not against the
individuals who implement the plan. Garratt now
appeals the district court's decision not to
remand this matter to the state court, arguing
that the plan at issue is an unfunded excess
benefit plan and thus exempt from the provisions

of ERISA in accordance with 29 U.S.C. sec. 1003(b)(5). Garratt further contends that the district court compounded its error by finding that, pursuant to the requirements of ERISA, Garratt had failed to state a proper claim upon which relief could be granted. For the reasons stated herein, we affirm the decision of the district court.

I.  BACKGROUND

In 1993, Reg. G. Garratt was retained by Knowles Electronics, Inc. ("Knowles") to be its Chief Executive Officer ("CEO"). Four years later, Garratt assumed the role of Chairman of the Board in addition to his post as Knowles' CEO. In his corporate capacities, one of Garratt's charges was to maximize the value and assist in the sale of Knowles for the benefit of the Knowles family. As an incentive for Garratt to perform these duties, on March 15, 1998, Garratt and Knowles mutually agreed to amend the Employment Agreement. Pursuant to the amendment, in consideration for his full cooperation and assistance in furthering the corporation's future sale, Knowles agreed to make a special incentive payment to Garratt in an amount equal to 0.33% of the ultimate sale price./1 The special incentive payment ("success bonus") was to be made to Garratt no later than ten days after the closing.

On March 16, 1998, the Board of Directors of Knowles adopted an unfunded SERP, which, according to its language, was established "solely for the purpose of providing benefits for certain salaried employees and those of its affiliates who participate in the Knowles Electronics Pension Plan in excess of the limitations imposed by the Internal Revenue Code on the benefits available under the Knowles Electronics, Inc. Pension Plan." The amount to be paid to Garratt under the SERP was calculated to be a lump sum payment of $1,349,000 upon Garratt reaching his normal retirement age. However, that figure did not include any portion of the success bonus, as no sale of Knowles was pending. Pursuant to Article 7.1 of the SERP, the Plan was to terminate upon the sale of Knowles, with all benefits to be paid out at that time.

More than one year later, it was decided that Knowles would be sold to Doughty Hanson & Co., with the closing to take place on June 30, 1999. As a result of the impending sale, Knowles had the amount owed to Garratt recalculated, computing the success bonus as earnings under the Knowles Qualified Pension Plan. Thus it was determined that Garratt was entitled to receive $3,200,000. John Hupp, an attorney for Knowles, informed the Board of Directors of the revised

amount Garratt would take in, an amount which Hupp deemed to be excessive. At the behest of Hupp the Board then approved a proposal to exclude the success bonus from the SERP calculations. Garratt abstained from the vote where a resolution was passed amending the SERP to provide "that for purposes of this calculation, 'Earnings' as defined in the Qualified Plan shall not include any bonus or incentive payments made by reason of the sale or disposition of the Company under the 1989 Stock Appreciation Plan for Key Employees."

On June 29, 1999, the day before Knowles was sold, Garratt received $1,349,000 under the SERP, prompting him to bring this lawsuit. Garratt's complaint, which was filed in the Circuit Court of Cook County, Illinois, was brought directly against (1) the members of the Knowles family who received the difference between the benefits that would have been paid to Garratt had the amendment not been adopted and the amount Garratt received because of the amendment, (2) the Board of Directors who approved the amendment, and (3) the lawyer and his firm who assisted in implementing the amendment. The complaint alleged three state law causes of action: tortious inference with a prospective economic advantage, civil conspiracy, and unjust enrichment. On February 7, 2000, the defendants filed a notice of removal, grounded under 29 U.S.C. sec. 1132(e)(1), which provides in relevant part that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." Defendants further noted at the time that under the complete preemption doctrine, contained in 29 U.S.C. sec. 1144, all state common law claims falling within the scope of sec. 1132(a)(1)(b) are displaced, because a suit purporting to raise such state law claims is necessarily federal in character. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 60, 66 (1987).

After the case was removed to the District Court for the Northern District of Illinois, Garratt filed a motion to remand the matter to state court, arguing that the SERP at issue was an unfunded excess benefit plan which is exempt from the provisions of ERISA under 29 U.S.C. sec. 1003(b)(5)./2 The district court did not agree with Garratt's characterization of the SERP, and thus denied his motion to remand. Finding that a dispute regarding benefits owed under Knowles' SERP was guided by the provisions of ERISA, the district court held that Garratt's complaint did not properly state a cause upon which relief could be granted. Specifically, the court held

that "ERISA permits suits to recover benefits only against a Plan as an entity," Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996), and Garratt's complaint was brought directly against the Board members and attorneys of Knowles. Thus, on June 13, 2000, the district court granted defendants' motion to dismiss, stating that "[t]his case is dismissed without prejudice to the Plaintiff's right to bring an action against the proper entity under ERISA." Garratt now appeals the district court's decision not to remand this matter to state court. He contends that the court erroneously determined that Knowles' SERP was not an excess benefit plan under sec. 1003(b)(5). As an excess benefit plan, he posits, adjudication of a dispute regarding money owed under this SERP need not be guided by the jurisdictional and procedural limitations of ERISA.

## II.  DISCUSSION
### A.  Garratt's Motion to Remand

While Garratt's overarching assertion on appeal is that the district court erred in not remanding this matter to state court, at its essence, the parties dispute whether the SERP adopted by Knowles should be considered an unfunded excess benefit plan./3 Garratt contends that the Plan should be construed as such, and that thus ERISA does not apply. See 29 U.S.C. sec. 1003(b)(5). Because ERISA is inapplicable, Garratt submits that the district court did not have jurisdiction over his complaint, which alleges only state law causes of action. In response, the defendants argue that the SERP does not fall within the definition of an excess benefit plan. Rather, they argue the SERP is a "top hat plan,"/4 and that our case law holds that suits to recover benefits owed under a top hat plan are governed by ERISA. Therefore, defendants posit that the district court correctly denied the motion to remand.

We review a trial court's ruling denying plaintiff's motion to remand a matter to state court de novo. See Bastien v. AT&T Wireless Serv., Inc., 205 F.3d 983, 987 (7th Cir. 2000). As stated above, ERISA provides that "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." 29 U.S.C. sec. 1132(e)(1). Yet, ERISA provides that its provisions do not apply to all employee benefit plans. Relevant for our purposes, 29 U.S.C. sec. 1003(b)(5) exempts unfunded excess benefit plans

from the reach of ERISA's provisos./5

In determining whether the SERP at issue is an excess benefit plan, we are guided by the definition provided in the Act:

The term 'excess benefit plan' means a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of Title 26 on plans to which that section applies without regard to whether the plan is funded. To the extent that a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer is maintained for such purpose, that part shall be treated as a separate plan which is an excess benefit plan. 29 U.S.C. sec.1002(36) (emphasis added).

Consequently, our inquiry becomes one of whether Knowles' SERP was maintained solely to provide benefits in excess of the limitations imposed by sec. 415 of the Internal Revenue Code.

In Olander v. Bucyrus-Erie Co., 187 F.3d at 604, we recognized that "the statutory test for whether a plan is an excess benefit plan [turns] on the purposes of the plan in general rather than on the specific way the plan applies to a party." We stated that the decisive consideration is whether avoiding the limitations of sec. 415 "was the sole purpose for which the employer maintained the plan," such that even if a plan with other purposes has only the effect of avoiding the sec. 415 limitations in an individual case, that plan is not an excess benefit plan. Id. at 605.

Focusing on Knowles' SERP, that Plan's stated purpose, as observed above, was to provide benefits for certain salaried employees "in excess of the limitations imposed by the Internal Revenue Code." We further note that other provisions within the SERP corroborate that expressed design of avoiding any restrictions imposed by the tax code. For example, Article II of the SERP, entitled "Eligibility" specifically states that "[a] participant who is eligible to receive a Qualified Plan Retirement Benefit, the amount of which is reduced by reason of the application of the limitations on benefits imposed by any provisions of the Code . . . shall be eligible to receive a Supplemental Retirement Benefit." Additionally, the sum payable under the SERP is calculated as the difference between the monthly amount of the Qualified Retirement Plan to which the participant would have been entitled to "under the Qualified Plan if such Benefit were computed without giving effect to any limitations

on benefits imposed by any provisions of the Code" less the monthly amount of the Qualified Plan Retirement Benefit actually payable to the participant under the Qualified Plan.

In Olander, we were faced with a plan which stated three distinct purposes, one of which was to avoid the limitations imposed by sec. 415 of the Internal Revenue Code. See Olander, 187 F.3d at 603. Despite the fact that Olander had claimed that the plan applied to his particular case in a manner such that the purpose of the plan was only to avoid sec. 415, we determined that the stated purpose, which was broader, could not be ignored. Thus, we found the plan at issue in his case not to be an unfunded excess benefit plan. Here, our task appears to be more straightforward. Knowles' SERP does not reference sec. 415 of the Internal Revenue Code, but rather states as its purpose the intent to avoid limitations on benefits imposed by any provisions of the Code. While we believe that this broad language is indicative of a desire to avoid all possibly relevant provisions of the Internal Revenue Code, nonetheless, Garratt argues, and we agree, that Olander mandates that we inquire beyond the plain language contained in a SERP to determine whether the plan was enacted solely to avoid the limitations imposed by sec. 415.

Garratt's principal argument in support of his position that Knowles' SERP had the sole purpose of avoiding sec. 415 of the Code is that the only provision that the SERP could have operated to avoid was sec. 415. We recognize that this argument was rejected in Olander, as we stated there that the decisive consideration was the sole purpose of the plan and not its application to a particular case. See id. at 605. Garratt seeks to distinguish this case from that rule in Olander by noting that there, the plan had a stated purpose other than avoiding sec. 415. Thus, he contends that the rule of Olander is that though a plan may operate only to avoid sec. 415's limitations, that cannot overcome the fact that the plan does not have the stated purpose to solely avoid sec. 415. However, Garratt suggests that "[w]hether the SERP specifically enumerated sec. 415 on its face is not necessarily a condition precedent to discerning the sole purpose of the plan was to avoid the limitations imposed by that section." Rather, he contends that so long as the plan does not specifically enumerate a purpose other than avoiding sec. 415, it is possible to consider that plan as having the stated purpose of solely avoiding sec. 415. Because the stated purpose of this Plan does not rule out the possibility that this an excess benefit plan, Garratt suggests that we may examine how the Plan operates to determine the

purpose behind it.

We have already expressed our conviction that the plain language of the SERP manifests a purpose broader than that allowed for excess benefit plans. Unfortunately for Garratt, our further inspection confirms that the purpose of the SERP was, as it states, to avoid any provision of the Internal Revenue Code. Specifically, Knowles' SERP had the purpose of avoiding not only the limitations contained in sec. 415 of the Internal Revenue Code, but also those limitations contained in sec. 401(a)(17) of Title 26. At the time relevant to these proceedings, sec. 401(a)(17) placed a $160,000 annual limit on the amount of compensation that could be used to calculate pension benefits payable from a qualified retirement plan. It is undisputed that Garratt's annual compensation for the relevant period was greater than $160,000. If avoidance of sec. 401(a)(17) were not a purpose of the SERP, then Garratt would not have had any of his compensation above $160,000 computed for purposes of determining benefits under the pension plan. While Garratt argues that sec. 401(a)(17) only has an indirect effect on benefits paid out, we believe that the avoidance of the limitations of sec. 401(a)(17) are significant. Combining the stated language of the SERP along with the significant monetary advantage received by the avoidance of sec. 401(a)(17), we believe that the purpose of the SERP was, as stated, to avoid the limitations on benefits imposed by any provision of the Code. Thus, the SERP is not an excess benefit plan, but falls within the broader category of top hat plans./6

Both the stated purpose of the SERP and the nature of the benefits paid under the SERP demonstrate that it is a top hat plan, rather than an excess benefit plan. Because the SERP is not an excess benefit plan, the claims presented are exclusively within the federal courts' jurisdiction under 29 U.S.C. sec. 1132(e). Thus, the district court did not err in refusing to grant Garratt's motion to remand this matter to state court.

B.  Defendants' Motion to Dismiss

Garratt's second contention on appeal is that the district court erred in granting defendants' motion to dismiss. Specifically, he maintains that the court incorrectly found ERISA applicable, and thus determined that Garratt's complaint had been brought against the wrong party. Garratt suggests that ERISA's requirement that a complaint to recover benefits under a plan be brought against the plan as an entity is

irrelevant to these proceedings. We review the district court's decision to grant defendants' motion to dismiss de novo. See McCormick v. City of Chicago, 230 F.3d 319, 323 (7th Cir. 2000).

Having determined that Knowles' SERP is not an unfunded excess benefit plan, but rather a top hat plan subject to ERISA, the resolution of this matter becomes patent. While before the district court Garratt had contended that even if ERISA applied the district court erred in granting defendants' 12(b)(6) motion, he has since abandoned that claim. Garratt had suggested that despite preemption of his state law claims, ERISA would permit his suit against the defendants for breach of fiduciary duty. However, since a top hat plan is exempt from ERISA's fiduciary rules, Garratt would have no basis to bring such a claim. See Olander, 187 F.3d at 604. Thus, Garratt cannot escape the rule, clearly articulated in Jass, that "ERISA permits suits to recover benefits only against a Plan as an entity."/7 Jass, 88 F.3d at 1490 (emphasis added). We therefore find that the district court correctly dismissed Garratt's complaint, leaving open to him the option of bringing suit against the SERP as an entity.

III.  CONCLUSION

The district court correctly determined that Knowles' SERP was not an excess benefit plan and that ERISA therefore applied. Hence, the court rightly refused to remand the matter to state court and appropriately granted defendants' motion to dismiss.

For the foregoing reasons, we Affirm the decision of the district court.

/1 On March 15, 1999, the Board of Directors approved an amendment that provided that Garratt would receive 0.42% of any future sale price rather than 0.33%.

/2 29 U.S.C. sec. 1003(b)(5) states that "[t]he provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is an excess benefit plan . . . and is unfunded."

/3 As a preliminary matter we must satisfy ourselves that a final decision has been rendered in this matter for purposes of appellate review under 28 U.S.C. sec. 1291. In granting defendants' Fed. R.Civ.P. 12(b)(6) motion, the district court noted that its dismissal was without prejudice. Yet, in ITOFCA, Inc. v. MegaTrans Logistics, Inc., 235 F.3d 360, 363 (7th Cir. 2000), we stated unequivocally that a dismissal without

prejudice "does not terminate the litigation in the district court in any realistic sense and so is not a final decision within the meaning of 28 U.S.C. sec. 1291, which authorizes the appeal of such decisions." (internal citation omitted). In this instance we find the district court's dismissal not to be a bar to our appellate review. Though the district court did state that the dismissal of the complaint was without prejudice, it is clear that the court was referring to Garratt's right to bring his claim against the Plan under ERISA. The finality requirement of sec. 1291 should be applied practically rather than technically. See id. at 364. Practically speaking, as the district court noted, with its decision "[t]his action [was] closed." Thus, we move on to address the merits of Garratt's appeal.

/4 A top hat plan is an unfunded plan the employer maintains "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees." 29 U.S.C. sec.sec. 1051(2), 1081(3), 1101(a); see also Olander v. Bucyrus-Erie Co., 187 F.3d 599, 604 (7th Cir. 1999). Thus, it is subject to ERISA's enforcement provisions even though it is exempted from ERISA's vesting, participation, funding, and fiduciary rules. See Olander, 187 F.3d at 604. As noted previously, the excess benefit plan stands in contrast to the top hat plan, in that the former is not subject to either the enforcement or substantive provisions of ERISA. See 29 U.S.C. sec. 1003(b)(5). In terms of design, the difference between a top hat plan and an excess benefit plan is, in most circumstances, that the top hat plan can have multiple broad purposes, while an excess benefit plan has the sole purpose of avoiding the limitations imposed by sec. 415 of the Internal Revenue Code.

/5 There is no dispute that the Knowles SERP was unfunded.

/6 Garratt provides two additional arguments in support of his position which we find unpersuasive. First, he suggests the SERP here was clearly intended to be an excess benefit plan, as its stated purpose tracks the language of ERISA's definition of such a plan. While Garratt's position does evince a certain logic, the Plan deviates from the language of 29 U.S.C. sec. 1002(36) in the crucial aspect of which limitations were to be avoided. As such, we believe it equally plausible that the alteration is a manifestation of an intentional desire to avoid all provisions of the Code rather than merely sec. 415. Thus, we find that the tracking of the language of sec.1002(36) to be inconclusive. Second, in support of his

proposition that the purpose of this Plan was to avoid the limitations on benefits imposed by sec. 415, Garratt notes that sec. 7.6 of the SERP requires that the Plan be construed under the laws of Illinois. He argues that such a provision in the SERP displays a desire on the part of the drafters that the SERP be exempt from the requirements of ERISA. We disagree. As we noted above, as a top hat plan, the SERP is exempt from ERISA's vesting, participation, funding, and fiduciary rules. See Olander, 187 F.3d at 604. As such, the choice of law provision may have been added to guide disputes in those matters other than enforcement. Moreover, while such a provision could be considered evidence of an intent to avoid ERISA, we do not believe the insertion of such a provision to overcome the stated purpose and the nature of the benefits paid under the SERP.

/7 Recently, in Mein v. Carus Corp., No. 00-2618, 2001 WL 167989, at *3 (7th Cir. Feb. 21, 2001), we seized upon language contained in Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir. 1997), to clarify the holding of Jass. In Mein, we again noted that "ERISA permits suits to recover benefits only against the plan as an entity," and that thus "it is silly not to name the plan as a defendant in an ERISA suit." Mein, 2001 WL 167989 at *3. However, because often the corporation and the plan are intertwined, with the plan documents referring to the plan and the company interchangeably, we noted that in certain instances, the fact that the corporation is named as a defendant in the suit is no barrier to allowing the case to proceed. See id. at *3-4. Yet, Mein does not suggest that it would be proper for a plaintiff seeking benefits to substitute individual corporate members as defendants rather than the plan. Hence, we find that Mein has no bearing on these proceedings.