**Kenneth L. NORD, Plaintiff–Appellant,**

v.

**The BLACK & DECKER DISABILITY PLAN, Defendant–Appellee.**

No. 00–55689.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 2001.

Filed July 15, 2002.

---

Lawrence D. Rohlfing, Santa Fe Springs, CA, for the plaintiff-appellant.

Lee T. Paterson, Los Angeles, CA, for the defendant-appellee.

Before: B. FLETCHER, D.W. NELSON, and McKEOWN, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff Kenneth Nord seeks disability welfare benefits from defendant Black & Decker Disability Benefits Plan ("Black & Decker" or the "Plan"). The district court granted summary judgment in favor of Black & Decker, holding that it did not abuse its discretion by denying Nord disability benefits under the terms of the Plan. Nord appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. Based on our recent decision in *Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir.2001), we conclude that the district court erred in reviewing the disability determination for an abuse of discretion. We review *de novo* and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Nord was formerly employed as a Material Planner for Kwikset Corporation, a subsidiary of the Black & Decker Corporation. Nord's responsibilities as a Material Planner included ordering goods,

interacting with vendors, and maintaining inventory levels. The position is a sedentary one, requiring up to six hours of sitting and up to two hours of standing or walking per day.

Through his employment at Kwikset, Nord was enrolled in the Black & Decker Disability Plan. The language of the Plan grants absolute discretion to the Plan Manager to make disability determinations.[1] The Plan also invests the Plan Manager with the authority to delegate one or more of his responsibilities to a Claims Administrator. The third-party Claims Administrator retained while Nord's claim was under review was Metropolitan Life Insurance Company ("MetLife"). The Plan provides long-term benefits coverage for participating employees who are prevented by disability from occupying their regular jobs for the first 30 months of the disability. At issue here is Nord's disability from performing his regular job for 30 months. Continuing benefits are available for those participants who are prohibited from engaging in any gainful employment for which they are qualified due to their disabilities.[2]

In March 1997, Nord consulted Dr. Hartman regarding his experience with intermittent hip and low back pain. Dr. Hartman concluded that Nord suffered from mild degenerative disc disease at the L4–L5 and L5–S1 vertebral levels.[3] In July 1997, Dr. Hartman diagnosed Nord as suffering from sciatica and disc disease at L4–L5 and placed him on medication. After a one-week trial with that treatment plan, Dr. Hartman concluded that Nord had experienced no improvement, and he took Nord out of work temporarily. He recommended orthopedic consultation while continuing medication. On July 16, 1997, Nord submitted a claim under the Plan for up to 30 months of long-term disability benefits.

On August 13, 1997, Dr. Hartman drafted a letter indicating that Nord was under his medical care and would be unable to return to work until he experienced sufficient recovery from his lumbar disc syndrome. Dr. Hartman wrote an additional letter in March 1998, after Nord had begun treatment by an orthopedist, Dr. Lytton Williams, confirming continuing medical treatment and restating his earlier conclusion that Nord remained unable to return to work. In April 1998, Dr. Hartman performed a physical capacity evaluation in which he estimated that Nord could sit for up to one hour a day and could occasionally lift up to five pounds.[4] Nearly

1. The Plan provides that:

> The determination of disability shall be made by the Plan Manager based on suitable medical evidence and a review of the Participant's employment history that the Plan Manager deems satisfactory in its sole and absolute discretion.

2. The Plan defines "disability" to mean:

> the complete inability (whether physical and/or mental) of a Participant to engage in his regular occupation with the Employer (during the first 30 months of Disability), and became with the thirty-first month of Disability, the Participants[sic] complete inability (whether physical and/or mental) of a participant to engage in any gainful occu-

> pation or employment with any employer for which the Employee is, as of his Disability Date, reasonably qualified by education, training or experience.

3. This diagnosis was later reconfirmed by an MRI scan, conducted on July 23, 1997, which showed degenerative disc disease at L4–L5 and L5–S1, with disc desiccation and a mild diffuse bulge.

4. At the same time, Nord underwent overlapping treatment from two orthopedic doctors, Dr. Silva and Dr. Mumtaz Ali. Both doctors confirmed aspects of Dr. Hartman's diagnosis, including the presence of lumbosacral pain requiring continued treatment with medication and physical therapy.

identical findings were made by Nord's treating orthopedic physician, Dr. Williams, around the same time.

On February 16, 1998, MetLife informed Nord that his claim had been denied because he did not meet the "own occupation" definition of disability for the first 30 months of coverage. In the same letter, MetLife also informed Nord that he could "request a review of [his] claim" by sending his request to MetLife's "Group Claims Review." Nord requested review of his claim through a letter sent by counsel. Between March 25, 1998 and October 14, 1998, Nord and MetLife exchanged letters and medical documentation in an effort to process the review of his claim.

This review process included the· Plan's referral of Nord to Dr. Antoine Mitri for independent evaluation of his medical claims. Dr. Mitri observed Nord to be normal except for some limitations in bending and assuming cramped or unusual positions. Dr. Mitri opined that Nord should be able to perform sedentary work, with no material limitations in his ability to sit, while taking pain reduction medication. However, the review process also included Nord's providing the Plan with a work capacity evaluation performed by Ms. Janmarie Forward, a human resources representative at Black & Decker, who determined that Nord lacked the capacity to perform the requirements of his job because of his physical limitations. Forward based this determination on the assumption that Nord faced chronic myofascial pain and that this experience of pain would make it impossible for him to carry on the necessary interpersonal relationships to perform his job.

MetLife made a final recommendation to the Plan ·Manager to deny Nord's claim, ·and the Plan Manager accepted that recommendation. In a letter dated October 27, 1998, the Plan Manager informed Nord by letter of the outcome of this initial step in his ·appeal and explained how Nord could perfect his appeal under ERISA. Black & Decker indicated that it had rejected the opinion of Forward that Nord's pain syndrome prevented him from resuming work in his former position.

Nord filed this action in the district court on January 14, 1999, asserting that Black & Decker's denial of his disability benefits violated ERISA. On February 28, 2000, the parties filed cross-motions for summary judgment. The district court granted the defendant's motion and denied Nord's motion. The court found that Black & Decker did not abuse its discretion by denying Nord's disability claim. Nord appeals the district court's order.

### STANDARD OF REVIEW

 We review the district court's order granting summary judgment *de novo*. See *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.1999). In addition, we review *de novo* "the district court's choice and application of the standard of review applicable to decisions of plan administrators in the ERISA context." *Regula v. Delta Family–Care Disability Survivorship Plan*, 266 F.3d 1130, 1138 (9th ·Cir.2001); *see also Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir.1997).

 In reviewing a grant of summary judgment, we "must determine whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995); Fed.R.Civ.P. 56(c). *See also Pomerantz v. County of Los Angeles*, 674 F.2d 1288, 1290 (9th Cir.1982) (holding that the same standard applies for review of denial of summary judgment).

An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### *District Court's standard of review for Black & Decker's disability determination*

The district court reviewed Black & Decker's termination of Nord's disability benefits under an abuse of discretion standard, despite Nord's allegations that Black & Decker was operating under a conflict of interest. Nord relies on the opinion of Black & Decker's own human resources representative and the opinions of three treating physicians that Nord was no longer capable of occupying his former position. He argues that Black & Decker's arbitrary rejection of these opinions constitutes material, probative evidence that it was operating under an actual conflict. Nord further argues that, because Black & Decker was operating under a conflict of interest, the district court should have reviewed the administrator's decision *de novo*.

■ The standard of judicial review for a disability determination by an insurer covered under ERISA varies depending on the plan language. We review *de novo* the decision of a plan administrator to deny benefits "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir.1999). The plan language must be explicit. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir.1999) (en banc) (holding that plan language stating that the insurer will pay benefits "upon receipt of satisfactory written proof" of disability was ambiguous, and thus did not confer discretion). When the plan language confers discretion, we review the decision of the plan administrator under an abuse of discretion standard. *Tremain*, 196 F.3d at 976.

■ In this case, the plan language clearly confers discretion upon the Plan Manager both to determine benefits eligibility and to interpret the terms of the Plan.[5] However, the fact that the terms of the Plan confer broad discretionary authority upon the plan administrator does not end our inquiry into the proper standard of review. An insurer with a "dual role as the administrator and funding source for the [p]lan" has an inherent conflict of interest. *Lang*, 125 F.3d at 797. In *Firestone Tire & Rubber Co.*, the Supreme Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." 489 U.S. at 115, 109 S.Ct. 948 (internal quotation marks omitted). We have held that our review in such cases is "still for abuse of discretion, [but it] is less deferential." *Tremain*, 196 F.3d at 976 (internal quotation marks omitted).

Black & Decker admits that it acts as both the funding source and the plan administrator with regard to the Plan. It notes that administration of the Plan in Nord's case had been delegated to MetLife, a third-party administrator. However, MetLife acted as the agent of Black & Decker and not as the independent execu-

**5.** *See supra* note 1.

tor of a true trust.[6] *See Lang*, 125 F.3d at 798 (stating that "plans such as this one, funded by insurers and also administered by them, are not true trusts"). Therefore, Black & Decker, through MetLife, was operating under an inherent conflict of interest.

The "less deferential" standard of review for cases involving conflicts consists of two steps:

First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. On the other hand, if the beneficiary *has* made the required showing, the principles of trust law require us to act very skeptically in deferring to the discretion of an administrator who appears to have committed a breach of fiduciary duty.

*Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1323 (9th Cir.1995). By providing material, probative evidence of a conflict, Nord would create a rebuttable presumption that the Plan's decision violated its fiduciary responsibilities. The Plan would then "bear[ ] the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits." *Lang*, 125 F.3d at 798. If the plan fails to carry its burden, then we review *de novo* its decision to deny benefits. *Tremain*, 196 F.3d at 976.

This appeal is controlled by our recent ruling in *Regula v. Delta Family–Care Disability Survivorship Plan*. In *Regula*,

we rejected the district court's application of the abuse of discretion standard to a claim for wrongful termination of disability benefits because the district court had failed to evaluate whether the insurer's apparent conflict of interest had affected its determination. If so, we would require that the court review the plan administrator's decision *de novo*. *Regula*, 266 F.3d at 1145–46; *see also Lang*, 125 F.3d at 799–800 ("The district court did not conduct the appropriate conflict of interest analysis and hence accorded [the insurer] a deference to which it was not entitled."). Our prior decisions have established that material, probative evidence of a conflict may consist of inconsistencies in the plan administrator's reasons, *Lang*, 125 F.3d at 799, insufficiency of those reasons, *Tremain*, 196 F.3d at 977, or procedural irregularities in the processing of the beneficiaries claims, *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir.1999). In *Regula*, we held that rejection of the opinions of the beneficiary's treating physicians could likewise establish conflict where the rejection is not "sufficiently supported by the record." 266 F.3d at 1147. On remand, we directed the district court to consider Delta's departure from the prevailing opinions of Regula's treating physicians as material, probative evidence of an actual conflict of interest but to allow Delta to rebut that evidence in a manner consistent with our prior precedent. *See Lang*, 125 F.3d at 798; *see also Tremain*, 196 F.3d at 978.

In *Regula*, the conflict of interest issue was not litigated in the district court but was entertained by us on appeal because of its relevance to determining the standard of review. 266 F.3d at 1145–46. Therefore, we did not rule on the existence of a conflict of interest in that case. *Id.* at

---

**6.** MetLife processes the insured's claim and makes a recommendation whether to grant or deny benefits; Black & Decker's Plan Manager makes the final disability determination after receiving MetLife's recommendation.

1147. Rather, we remanded to the district court so that the defendant insurer would have an opportunity to rebut the material, probative evidence of conflict that we ascertained in our review of the district court record. *Id.*

■ *In the case before us, the district court rejected Nord's* argument that inconsistencies and procedural irregularities in Black & Decker's administration of his claim demonstrated the insurer's conflict of interest. In particular, the district court held that Black & Decker's rejection of the conclusion of its own human resources representative, Forward, was not material, probative evidence of a conflict. Forward opined that Nord was unable, due to his medical condition, to perform the functions of a Material Planner. Forward's opinion was solicited by the administrator; she relied on Dr. Mitri's assessment as provided by the administrator. To contradict her opinion out of hand is not only high-handed but also certainly some evidence of a conflict.[7]

The district court erred also in its refusal to view Black & Decker's rejection of the prevailing opinions of Nord's treating physicians as germane to a determination of whether the Plan's administration was impaired by a conflict of interest. As discussed above, Nord was diagnosed with degenerative disc disease, sciatica, and myofascial pain syndrome. This diagnosis was confirmed by an MRI and CT scan and was not contradicted by Dr. Mitri, the independent clinician retained by Black & Decker to evaluate Nord's claim. Nord's primary treating physician, Dr. Hartman, concluded after a physical capacity evaluation that Nord could sit for up to one hour a day and could carry up to five pounds.[8] Black & Decker's own description of the physical requirements for a Material Planner indicate that the person occupying the position would have to sit for up to six hours a day and carry up to 20 pounds.[9] In addition, Dr. Hartman wrote two letters to Black & Decker in which he stated that Nord's medical condition prevented him from returning to work even though Nord had made improvements with physical therapy and medication. Dr. Hartman's diagnosis, as well as his prescribed course of treatment, were confirmed by Nord's other treating physicians, Drs. Williams and Silva.

Dr. Mitri disagreed with Nord's treating physicians in two principal respects: First, Dr. Mitri found that Nord suffered from only minor limitations to his range of motion and in his ability to sit for long periods of time if he took his pain medication. The medications to which Dr. Mitri referred in drawing this conclusion (Relafen,

---

7. In addition, Nord claims that the Plan violated its administrative procedural requirements by failing to provide, in its letter of October 27, 1998, specific reasons for rejecting the opinion of Forward. However, Black & Decker's letter was sufficiently responsive in that it provided the insurer's reasons for its ultimate decision to deny benefits. Black & Decker was under no duty to rebut with specificity all evidence adduced by Nord to support his claim. *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1016 (9th Cir.1997) (en banc) (Fletcher, B., J., concurring in part and dissenting in part) (stating that under ERISA the reasons for a denial of benefits "must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial") (quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir.1997)).

8. This diagnosis of Nord's physical abilities was confirmed by an additional examination by Dr. Williams, who opined that Nord could sit for one hour at a time and for one hour during a day, and that he could occasionally lift up to five pounds.

9. Nord represents that while working in his former position he was sometimes required to lift up to 60 pounds.

Davrocet, and Flexeril) are all medications that were prescribed by Drs. Hartman and Silva for Nord at various stages throughout their treatment of his condition. Second, Dr. Mitri concluded that Nord could lift and carry up to 15 pounds less than 20% of the business day. Thus, Dr. Mitri concluded that, under medication, Nord could perform "sedentary work with some walking interruption in between."

■ Thus, the long-term treating physicians and Black & Decker's independent (but one-time) clinical examiner disagreed. The same clinical materials were available to both. In such a circumstance, under the treating physician rule, the plan administrator can reject the conclusions of the treating physicians only if the administrator "gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).

Nowhere in the record is any reason advanced as to why the treating physicians' opinions were unreliable and Dr. Mitri's more reliable. No evidence has been advanced that Nord's treating physicians considered inappropriate factors in making their diagnosis or that Nord's physicians lacked the requisite expertise to draw their medical conclusions. Instead, the administrator appears merely to have preferred to rely upon the more favorable conclusions of its own examiner. Given its dual role as funding source and administrator for the Plan, we conclude Black & Decker breached its fiduciary duty to Nord as a beneficiary of the Plan due to a conflict of interest.

■ Because the issue of an apparent conflict of interest was litigated below, Black & Decker received ample opportunity to demonstrate that its termination of Nord's benefits was free from conflict by advancing sound reasons for its denial of benefits. It has provided none. Rather, it has simply asserted at every turn, and again before this Court, that it was under no duty to consider evidence that was unfavorable to its determination, whether coming from Nord's physicians or from its own human resources representative. We faced an analogous situation in *Tremain*, where we ruled that the district court had erred by failing to consider evidence even though it was outside of the administrative record in determining whether a conflict of interest had impaired the insurer's benefits determination. 196 F.3d at 976–77. Based on the evidence before us, presented to the district court before it granted the insurer's motion for summary judgment, we concluded that the insurer's inconsistent reasons for denying the beneficiary's claim constituted material, probative evidence of a conflict (a conclusion not reached by the district court) and that the insurer had failed to present any evidence to rebut the presumption that a conflict of interest had impaired its determination. *Id.* at 977.

■ Therefore, following our precedent in *Tremain* and *Regula*, we conclude that the disability determination must be reviewed *de novo*. Under *de novo* review, the question becomes whether there is a genuine issue of material fact as to whether Nord is disabled. *See Newcomb v. Standard Ins. Co.*, 187 F.3d 1004, 1006 (9th Cir.1999). After cross-motions for summary judgment, we find that, although further record development for *de novo* review is sometimes appropriate, *see Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943–44 (9th Cir.1995), it is unnecessary in this case. Indeed, Black & Decker asserted in the district court that no additional evidence was necessary for an adequate *de novo* review. *See* Defendant's Memoran-

dum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment at 17 & n. 6. The administrative record reveals no genuine dispute as to whether Nord is disabled within the meaning of the plan for the first 30 months of coverage.

 The only evidence advanced by Black & Decker to dispute the evidence of Nord's disability is Dr. Mitri's opinion that Nord is capable of performing sedentary work. A scintilla of evidence or evidence that is not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000). We conclude that the lone opinion of Dr. Mitri, the doctor hired by Black & Decker, could not reasonably overcome all the other evidence demonstrating that Nord is disabled. Dr. Mitri's opinion is overwhelmed by substantial evidence in the record, including the opinions of three treating physicians that Nord's condition rendered him unable to meet the physical requirements of his position as a Material Planner. Viewing the administrative record as a whole, we conclude that no reasonable trier of fact could conclude that Nord is not disabled. Therefore, we grant Nord's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we reverse the ruling of the district court holding that Black & Decker was not operating under a conflict of interest. Upon a *de novo* review of the administrative record, we find that there is no triable issue of fact regarding Nord's disability and hold that Nord is entitled to disability benefits for the first 30 months of his disability.

REVERSED.