In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2934

BRUCE A. WALLACE,

*Plaintiff-Appellant*,

*v.*

RELIANCE STANDARD LIFE INSURANCE CO.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-C-714-C—**Barbara B. Crabb**, *Chief Judge*.

ARGUED JANUARY 14, 2003—DECIDED FEBRUARY 4, 2003

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After his diabetes led to renal failure, Bruce Wallace left his job as a manufacturer's sales representative and began receiving disability benefits under an insurance policy provided as a fringe benefit, and thus regulated by ERISA (the Employee Retirement Income Security Act). A successful kidney transplant ended Wallace's need for dialysis. When he did not return to work after recovering from the operation, Reliance Standard Life Insurance Co., which underwrote the disability insurance, cut off his benefits. Wallace sued under §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B). Be-

cause the policy does not confer interpretive discretion on Reliance, the district court made an independent decision about Wallace's eligibility. See *Herzberger v. Standard Insurance Co.*, 205 F.3d 327 (7th Cir. 2000). The judge concluded that ample medical evidence (including statements by physicians releasing Wallace for work) demonstrates that he is no longer disabled, and she entered summary judgment for Reliance. Because the district court made a *de novo* determination without objection from Reliance, this appeal is unaffected by the disagreement between this circuit and the ninth about the consequences of an insurer's or sponsor's financial interest. Compare *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 980-81 (7th Cir. 1999), with *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 828-29 (9th Cir. 2002), cert. granted, No. 02-469 (U.S. Jan. 10, 2003).

Wallace does not challenge the district judge's assessment of the medical evidence in the record. Instead he contends that Reliance was obliged to obtain additional medical evaluations, which would be submitted to an independent physician for assessment. Nothing in the policy, the employer's plan, or the summary plan description, requires Reliance to take such steps. Nonetheless, Wallace insists, Reliance was acting as his fiduciary, and as his fiduciary was obliged to seek out additional evidence supporting his claim, even if (especially if) the medical evidence he submitted was inadequate.

Yet why is Reliance a fiduciary when implementing a contract of insurance? It has promised a particular set of benefits, to be sure, and must act with care in fulfilling its promises, but it did not undertake to evaluate all claims with a thumb on the scale in the participant's favor. Indeed, a genuine fiduciary would go to bat for Wallace as an *advocate*; but this is not the role Reliance undertook to perform. *Pegram v. Herdrich*, 530 U.S. 211,

222-26, 231 (2000), holds that a health maintenance organization (another kind of medical insurer) is not an ERISA fiduciary to the extent that it makes decisions about the nature of the care required under the contract. Pre-*Pegram* opinions that loosely refer to medical insurers as fiduciaries are no longer authoritative (if they ever were; the passages in the cases to which Wallace points read like incautious dicta). Asked at oral argument what provision of ERISA turns an insurer into a fiduciary, Wallace relied entirely on 29 U.S.C. §1104. This section, however, specifies the duties of fiduciaries; it does not tell us who *is* a fiduciary. The "who" of the matter depends on 29 U.S.C. §1002(21)(A), which as the Court remarked in *Pegram* tells us that managers, administrators, and financial advisers of pension and welfare plans are fiduciaries. *Pegram* concluded that a contract of insurance sold *to* a plan is not itself "the plan," so that the HMO implementing its contract is not a fiduciary. Just so, one would suppose, with a disability-insurance carrier. Cf. *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002) (state regulation of an HMO providing benefits to participants in a plan is regulation of insurance, not of the plan).

Now it is true, as we observed in *Hightshue v. AIG Life Insurance Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998), that when an insurer permits an independent medical evaluator to make the coverage decision, it will be hard to show that the decision was influenced by a conflict of interest. Contentions that insurers deny claims to save money, and that judicial review should be more searching as a result even when the plan or policy confers interpretive discretion, are before the Supreme Court in *Nord*; no such issue is at stake here, because the district judge did not defer to Reliance's decision but made her own. *Hightshue* does not hold that an insurer *must* pay for independent medical evaluations or accept their conclu-

sions; it gives plans an option, not an obligation. Insurers remain free (as do judges) to resolve conflicts in the medical submissions. Their obligation is to evaluate claims competently and dispassionately—and even that duty plays a limited role when the judge proceeds *de novo*. No case of which we are aware holds that, when a plan participant's own doctors opine that he is again able to work, the insurer or plan administrator must refer the participant to additional physicians in quest of one who will find a disabling condition. Adding to the bureaucracy would augment administrative costs, which in the long run would reduce the net benefits that employees enjoy under the plan.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*