# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-3100

MARK C. HAWKINS,

*Plaintiff-Appellant,*

v.

FIRST UNION CORPORATION LONG-TERM DISABILITY PLAN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 0456—**Suzanne B. Conlon**, *Judge.*

ARGUED FEBRUARY 25, 2003—DECIDED APRIL 22, 2003

Before POSNER, COFFEY, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Mark Hawkins was denied long-term disability benefits by his employer's welfare plan, sued under ERISA, and now appeals from the grant of summary judgment to the plan. Hawkins was employed full time to supervise the processing, auditing, and (if necessary) rebilling of a class of invoices. The job required him to sit more or less all day at a computer, reading and typing. In 1993 he was diagnosed with fibromyalgia, and since 1996 he has been treated for this condition by Dr. Robert Katz, a rheumatologist. In 2000 he stopped working and applied for total-disability benefits, to which he was

entitled by the terms of the welfare plan if his medical condition prevents him from working a minimum of 80 percent of the normal full-time work week either at his normal occupation or at some other occupation for which he might be fitted by training or experience. This would have to be a job similar to the one he held, hence a job that consisted of sitting at, and reading and typing on, a computer.

As we explained in *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (citations omitted), fibromyalgia, "also known as fibrositis [is] a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. . . . There is no serious doubt that Sarchet is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether Sarchet is one of the minority." That is the same question that confronted the plan in this case. It does not deny that Hawkins has fibromyalgia; he has 14 "points," well above the threshold of 11. But it found that he is not among the minority of fibromyalgia sufferers who are totally disabled, even though Dr. Katz reported

that Hawkins cannot sit or stand for more than a few minutes at a time. In Katz's words, "This patient struggles through each activity of his day due to pain, fatigue and headaches. He needs frequent rest periods each hour. Since this condition is chronic we do not anticipate a marked increase in functional level without increase in pain."

The plan turned down Hawkins' application for two reasons: because an "activities questionnaire" that the plan had required him to fill out indicated a greater ability to work than Dr. Katz had reported and because the plan's medical consultant, Dr. Chih-Hao Chou, advised after examining Hawkins' medical records and talking by telephone with Dr. Katz that Hawkins was not totally disabled. Because the terms of the plan reserve discretion to the plan's administrator, we cannot reverse unless the determination that Hawkins is not totally disabled is not merely erroneous but "arbitrary and capricious," that is, unreasonable.

Each party makes a bad argument, and let us clear them out of the way. Hawkins argues that the plan was required to give greater weight to the opinion of the treating physician, Dr. Katz, than to the opinion of the consultant, Dr. Chou, especially since Chou did not examine Hawkins but merely read his medical records and discussed his condition with Katz over the phone. A number of social security disability cases apply a "treating-physician presumption," e.g., *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); see also 20 C.F.R. § 404.1527(d)(2), though there are grounds for skepticism; physicians naturally tend to support their patients' disability claims, and so we have warned against "the biases that a treating physician may bring to the disability evaluation," *Dixon v. Massanari*, 270 F.3d 1171,

1177 (7th Cir. 2001), explaining that "the patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985); see also *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). But such skepticism may have a stronger basis when the treating physician squares off against a neutral consultant appointed by the Social Security Administration than when the consultant is hired by the administrator of a private plan and so may have a financial incentive to be hard-nosed in his claims evaluation in order to protect the financial integrity of the plan and of the employer that funds it. *Ladd v. ITT Corp.*, 148 F.3d 753, 754 (7th Cir. 1998); *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052-53 (7th Cir. 1987). If the incentives of the treating physician and of the plan's consultant are assumed to be equal and opposite, consideration of incentives drops out and the superior information likely to be possessed by the treating physician, especially when as in this case the consultant does not bother to examine the patient, may support the treating-physician presumption after all. See *Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1048 (7th Cir. 1989); cf. *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir. 1971).

The courts are divided on whether the presumption applies to benefits determinations by administrators of ERISA plans. Compare *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 831 (9th Cir. 2002), cert. granted, 123 S. Ct. 817 (2003); *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 532-33 (6th Cir. 2003); *Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 888 (8th Cir. 2002); *Skretvedt v. E.I. Du Pont de Nemours & Co.*, 268 F.3d 167, 184 (3d Cir. 2001), and *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), with *Connors v. Connecticut General Life Ins. Co.*, 272 F.3d 127, 135 n. 4 (2d Cir. 2001); *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607-08 (4th Cir. 1999),

and *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1016 (5th Cir. 1992). We have not addressed the issue. See also *Leahy v. Raytheon Co.*, 315 F.3d 11, 20-21 (1st Cir. 2002) (reserving it). Maybe the Supreme Court will resolve it in the *Nord* case. What is curious about the cases that we've cited is that all of them treat the issue as one for the reviewing court to resolve. But the procedures followed by plan administrators are matters of contract. Nothing compels an ERISA plan either to adopt or to reject a treating-physician presumption. We know that a plan may specify the degree of deference due the plan administrator's benefit determinations, and hence the scope of judicial review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000). Why can't it equally specify the procedures and rules of evidence, including presumptions, that the plan's administrator shall use to evaluate claims? Hawkins does not argue that, fairly read, the plan in this case incorporates the presumption.

The plan's bad argument is that because Hawkins worked between 1993 and 2000 despite his fibromyalgia and there is no indication that his condition worsened over this period, he cannot be disabled. This would be correct were there a logical incompatibility between working full time and being disabled from working full time, but there is not. A desperate person might force himself to work despite an illness that everyone agreed was totally disabling. *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982-83 (7th Cir. 1999); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995); *Jones v. Shalala*, 21 F.3d 191, 192-93 (7th Cir. 1994). Yet even a desperate person might not be able to maintain the necessary level of effort indefinitely. Hawkins may have forced himself to continue in his job for years despite severe pain and fatigue

and finally have found it too much and given it up even though his condition had not worsened. A disabled person should not be punished for heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working.

This bad argument does not invalidate but does undermine the plan's reliance on the fact that Hawkins' activities questionnaire *may* (the uncertainty implicit in our choice of this word is deliberate) disclose a higher level of activity than Dr. Katz reported. We learn from it that Hawkins has been taking classes in an effort to become a Web designer and that he surfs the Web for an hour or so at night and sometimes does some housework. Obviously a Web designer works at a computer, but there is nothing in the answers to the questionnaire to indicate that Hawkins is sitting full time, as it were, or that he has any aspiration to be a full-time Web designer (or for that matter an 80 percent of full-time Web designer). And when one is working at home it is easier to interrupt one's work every few minutes if need be than to do so at the office. But what is most important and ties back to the plan's bad argument is that Hawkins' unfortunate choice in life is between succumbing to his pain and fatigue and becoming inert, on the one hand, and on the other hand pushing himself to engage in a certain amount of painful and fatiguing activity. If he does the latter, it does not prove that he is not disabled.

We can imagine an argument that even if the activity disclosed in the questionnaire does not indicate a capacity to engage in full-time work, the fact that it is discrepant with the level of activity described by Dr. Katz, presumably on the basis of representations made to him by Hawkins, fatally undermines Hawkins' credibility. But that argument is not made.

That leaves the plan with only Dr. Chou's report to stand on. We cannot quote it in full, but the following excerpts will indicate its unsatisfactory character: "Although Ms. [*sic*] Hawkins has been diagnosed with fibromyalgia, the majority of individuals with fibromyalgia are able to work. . . . According to a personal activities questionnaire, . . . Mr. Hawkins reported that he was able to take classes and undergo pool therapy. . . . There are no objective findings to support restrictions. . . . Although Mr. Hawkins has various subjective complaints, he has been able to perform various extracurricular activities, including pursuing further education. The diagnosis of fibromyalgia does not, in and of itself, produce permanent impairment. . . . [I]ndividuals with chronic pain benefit when their lives have purpose and meaning. Although Mr. Hawkins may report an increase in subjective pain complaints on a return to work, an inability to work within the guidelines . . . is not objectively supported in the medical records."

The fact that the majority of individuals suffering from fibromyalgia can work is the weakest possible evidence that Hawkins can, especially since the size of the majority is not indicated; it could be 50.00001 percent. The fact that he can undergo pool therapy says nothing about his condition, nor the fact, a variant of the first point, that the diagnosis of fibromyalgia does not in and of itself produce permanent impairment. (Obviously the *diagnosis* produces nothing, but one sees what Dr. Chou was driving at—and it is still irrelevant.) The reference to "extracurricular activities" is hopelessly vague. That individuals with chronic pain benefit when their lives have purpose and meaning is certainly a sensible suggestion, but it favors Hawkins' claims as much it counters it, since a striving for purpose and meaning may explain why Hawkins may

be exerting himself beyond his capacity, paradoxical as "working beyond capacity" may seem.

But the gravest problem with Dr. Chou's report is the weight he places on the difference between subjective and objective evidence of pain. Pain often and in the case of fibromyalgia cannot be detected by laboratory tests. The disease itself can be diagnosed more or less objectively by the 18-point test (although a canny patient could pretend to be feeling pain when palpated at the 18 locations—but remember that the accuracy of the diagnosis of Hawkins' fibromyalgia is not questioned), but the amount of pain and fatigue that a particular case of it produces cannot be. It is "subjective"—and Dr. Chou seems to believe, erroneously because it would mean that fibromyalgia could never be shown to be totally disabling, which the plan does not argue, that because it is subjective Hawkins is not disabled.

What makes this nevertheless a close case is the deferential review that a plan's determinations receive when as in this case the terms of the plan vest the plan's administrator with discretion to grant or deny applications for benefits under it. But the discretion is not unlimited. The record contains nothing more than scraps to offset the evidence presented by Hawkins and by Dr. Katz. The denial of the application was unreasonable.

The judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

A true Copy:

     Teste:

                            _____
                           *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*