Hilaria RIVERA, on behalf of herself and all persons similarly situated, Plaintiff,

v.

**NETWORK HEALTH PLAN OF WISCONSIN, INC.,** Defendant.

No. 02 CV 1055.

United States District Court, E.D. Wisconsin.

May 28, 2004.

Jordan M. Lewis, Siegel Brill Greupner Duffy & Foster, Milwaukee, WI, Steven L. Toney, Toney & Wagener, New London, WI, Wood R. Foster, Jr., Siegel Brill Greupner Duffy & Foster, Minneapolis, MN, for Plaintiff.

Grant C. Killoran, James Patrick Thomas, Michael Best & Friedrich LLP, Sean D. Lanphier, Mallery & Zimmerman, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

GRIESBACH, District Judge.

In this ERISA action, the defendant insurer seeks summary judgment on the ground that it is not a proper defendant because it is neither the ERISA Plan nor the plan administrator and, in addition, the plaintiff has failed to join an indispensable party, namely the plan. The plaintiff opposes the defendant's motion on the merits, but has also filed a motion for leave to file a second amended complaint which she claims cures any possible defect. For the reasons set forth below, I conclude that the defendant's motion should be denied and that the plaintiff's motion to amend should be granted.

## I. BACKGROUND

Plaintiff Hilaria Rivera commenced this action on behalf of herself and all persons similarly situated against Network Health Plan of Wisconsin ("NHP") for NHP's alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). NHP is a Wisconsin based health maintenance organization (HMO) that provides group health benefits to employees of American Tissue Mills 2424. Plaintiff's father is an employee of American Tissue Mills, and thus she is a beneficiary under the company's employee benefits plan.

The gist of plaintiff's complaint is that NHP has engaged in a practice of unlawfully denying benefits for covered medical care and treatment where it appears there is a third party insurer that may be liable. In plaintiff's own case, she alleges that she was injured in an automobile accident on June 4, 2001, and was treated for her injuries at Maiman Chiropractic Center, an authorized NHP network provider, where she incurred a total of $1,633.03 in charges. Despite the fact that chiropractic services are expressly covered under the plan, plaintiff alleges that NHP "refused to honor these claims." (Am.Coml.¶ 23.) Plaintiff alleges that Maiman sent her a "patient ledger report" advising that "[a]ll claims have been sent to Network Health and they were denied, as they were third party claims." (*Id.* Ex. B.) Plaintiff's personal injury attorney asked NHP for an explanation for its refusal to pay the chiropractic charges. In response, NHP wrote:

The claims we received and have denied as "Third Party Subrogation Denial" from Maiman Chiropractic were processed per our contract with the provider of service. If the provider in-

dicates on a claim that the treatment is related to a Motor Vehicle Accident or a Workers Compensation injury we deny the claim. Maiman Chiropractic has full subrogation rights per our contract with them. Unfortunately I would not be able to furnish you with a copy of that contract.

If the treatment that our member received was not related to a Motor Vehicle Accident or a Workers Compensation injury the provider is welcome to resubmit the claims with the appropriate information.

. . . . .

Network Health Plan is not asserting any lien at this time for this accident. Additional questions/concerns regarding claims for Maiman Chiropractic should be directed to Maiman.

(*Id.*, Tab C.) Plaintiff alleges that she then paid Maiman directly under protest. (*Id.* ¶ 25, Tab D.)

Plaintiff claims that she and others similarly situated are entitled under 29 U.S.C. § 1132(a)(1)(B), to relief from NHP including restitution consisting of all past payments made to network medical providers in excess of their deductible and copayments. She also seeks on behalf of herself and others similarly situated disgorgement of profits, declaratory relief, and injunctive relief. (*Id.* ¶ 42.)

Although plaintiff filed her action in October of 2002, the case has unfortunately remained stalled on the issue of whether NHP is a proper defendant under ERISA. NHP initially filed a motion to dismiss on the ground that, as an HMO, it was not a plan within the meaning of ERISA, and therefore could not be sued in an action to recover benefits under § 1132(a)(1)(B). After a protracted effort to cure any such defect either by amendment or stipulation of the parties, I held that I could not conclude from the pleadings that NHP was not a proper party and denied NHP's mo-

tion to dismiss in a decision and order dated July 11, 2003. At the same time, I invited NHP to seek summary judgment on the issue if it could not otherwise convince plaintiff that it was not a proper party. NHP has now done so and it is to that motion that I now turn.

## II. ANALYSIS

### 1. Motion For Summary Judgment

In support of its motion, NHP has submitted a Declaration of Tim Temperly, its Chief Operating Officer, who states that NHP is a Health Maintenance Organization (HMO) and a member of Affinity Health System. (Decl. of Tim Temperly ¶ 1.) Temperly further states that NHP is an insurer that provided an insurance product to the American Tissue Inc. Employee Welfare Benefit Plan. (*Id.* ¶ 2.) NHP has also submitted copies of the documents produced in response to a subpoena issued by plaintiff's counsel to American Tissue, Inc., for "[a]ll health plan related documents in effect as of June 4, 2001, at the American Tissue Mills . . . operation in Neenah, Wisconsin." (Decl. of John Wesely Warren ¶ 2.) In response to plaintiff's subpoena, American Tissue, Inc., produced a copy of the Summary Plan Description (SPD) for the Welfare Benefit Plan For Employees of American Tissue, Inc., with an effective date of November 15, 2001. (*Id.* Ex. 3.) The SPD listed the plan name as "American Tissue Inc. Employee Welfare Benefit Plan," and the plan administrator as "American Tissue, Inc." (*Id.* 59–96.) Based upon these documents, NHP argues that it is now undisputed that it is neither the ERISA Plan nor the Administrator for the Plan under which plaintiff's claim arises.

Plaintiff argues that NHP's motion should be denied for three reasons. First, she contends that the motion is rendered

moot by the second amended complaint she has sought leave to file. Second, she argues that NHP's motion fails in any event because the evidence upon which NHP relies does not conclusively establish that it is not the proper party. Lastly, plaintiff argues that NHP's motion is premature because the class certification issue must be decided before the case may be resolved on the merits.

■ Turning to plaintiff's second argument first, I agree that NHP has failed to demonstrate it is entitled to summary judgment on the claim presently before me. The sole claim in plaintiff's first amended complaint is for benefits allegedly due under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B). (Am.Compl.¶ 41.) It is well established in this circuit that a claim for benefits under an ERISA Plan should normally be brought against the Plan. *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1490 (7th Cir.1996). But even in this circuit, the Plan itself is not the only possible defendant in an action for benefits under ERISA. *See Mein v. Carus Corp.*, 241 F.3d 581, 584 (7th Cir.2001) (employer/plan administrator held proper defendant in ERISA benefits claim where employer and plan closely intertwined); and *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir.1997) (court declines to hold employer wrong party to ERISA benefits action where plan documents refer to employer and plan interchangeably and employer designated itself as plan's agent for service of process). As the court noted in *Mein*, "the proposition [that in this circuit the plan can be the only defendant] is much less firmly established than the defendants would have us believe." 241 F.3d at 584.

In truth, the question of who is the proper defendant in an action seeking payment of benefits under an ERISA Plan is one of the more confusing issues to arise under that comprehensive congressional enactment. *See* "Who Does a Plaintiff Sue for Benefits?," ERISA Litigation Reporter, Oct. 1998, at 6. The Act itself clearly authorizes a suit against the plan. Section 1132(d)(1) states that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." But what does that mean? If a plaintiff obtains a judgment against a plan, how does he enforce it? While a plan may be "an entity" for purposes of naming it as a defendant, it is not a legal entity in the traditional sense of the phrase. ERISA's definition of an employee benefit plan is ultimately circular, leaving one with "the common understanding of the word 'plan' as referring to a scheme decided upon in advance." *Pegram v. Herdrich*, 530 U.S. 211, 222–23, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)(citing Webster's New International Dictionary 1879 (2d ed.1957)). A scheme decided upon in advance does not hold title to property that can be executed upon or attached. Nor does a scheme act or fail to act on claims for benefits. Where the plan is an employee welfare benefit plan, assets are held either by the company that funds the plan, if the plan is self-funded, or the insurer with whom the employer contracts if the benefits are provided through the purchase of insurance. And claims for benefits are either granted or denied by those who administer the plan. Yet, as NHP understands the law, and more than a few cases seem to say, the plan is the only possible defendant.

*Jass v. Prudential Health Care Plan*, on which most of the decisions in this circuit rely, is itself weak support for the proposition that the plan is the only proper defendant. In *Jass*, the plaintiff sued Prudential Health Care Plan (PruCare), the administrator of her husband's employee welfare benefit plan, and a nurse who was employed by PruCare when the nursed refused to authorize further payment for physical therapy that had been

prescribed for the plaintiff following her knee replacement surgery. 88 F.3d at 1484–85. The court concluded that the suit against the nurse was in reality an action for denial of benefits and, in affirming the district court's decision dismissing the claim against the nurse, held that an individual employee of the plan administrator could not be sued for a denial of benefits. *Id.* at 1490. Citing *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985), the *Jass* court stated that "ERISA permits suits to recover benefits only against the Plan as an entity. . . ." But then, curiously, the court went on to hold that "[t]he appropriate defendant for a denial of benefits claim would be the Plan, which in this case is PruCare," 88 F.3d at 1490, the very entity the court had previously identified as the administrator of the employee benefit plan.

Moreover, *Gelardi*, the Ninth Circuit case on which *Jass* relied for its statement that the plan was the only proper defendant, dealt with a self-funded plan with no third party insurer involved and a plan administrator with no discretionary control over the disposition of claims. 761 F.2d at 1325. The court's holding that the employer and third party administrator, neither of whom had discretionary control over the disposition of claims, were not proper defendants in that case hardly supports the general proposition that the plan is the only proper defendant in all ERISA benefit cases, no matter what the terms of the plan or the manner in which it is implemented. Since *Gelardi*, the Ninth Circuit, as well as other circuits, have held that claimants may also bring ERISA actions to recover benefits against plan administrators. *See Everhart v. Allmerica*, 275 F.3d 751, 754 (9th Cir.2001) and cases cited therein. And in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 363 n. 3, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), the Supreme Court clearly suggested that

§ 1132(a) actions against plan administrators were permitted.

This, unfortunately, only leads to another unanswered question: what is a plan administrator? The Act states that "[t]he term 'administrator' means -

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulations prescribe."

29 U.S.C. § 1002(16). As a practical matter, the person designated the administrator by the terms of the instrument under which the plan is operated may have nothing to do with administering the plan. Is a claimant limited to suing the administrator named in the plan documents? Several courts have suggested that they are not. In *Sheehan v. Metro. Life Ins. Co.*, 2002 WL 1424592, *2 (S.D.N.Y.2002), the court held that "[i]f an insurance company controls the distribution of funds and decides whether or not to grant benefits under an employee benefit plan, then it can be sued as a plan administrator." And in *American Medical Association v. United Healthcare Corp.*, 2002 WL 31413668, *6 (S.D.N.Y.2002), the court ruled that "insofar as any of the insurance company defendants in this action controlled the distribution of funds and decided whether or not to grant benefits under one of the plans, these entities may be sued as plan administrators," even though were not designated as such in the plan documents.

More recently, in *Penrose v. Hartford Life And Accident Ins. Co.*, 2003 WL 21801214 (N.D.Ill.2003), Judge Lefkow of the Northern District of Illinois concluded that a third party insurer was a proper

defendant in an ERISA benefits action where the plaintiff was unable to determine the actual identity of the plan or plan administrator. In *Penrose*, the claimant sued Hartford for disability benefits she claimed she was entitled to under an employer provided group benefits plan. Hartford moved to dismiss on the ground that it was not the plan, and the court granted Hartford's motion and dismissed plaintiff's complaint with leave to amend. In granting Hartford's motion, the court had assumed that "an entity known as the plan existed and could be named." *Id.* at *1. When the claimant was still unable to identify the plan through the avenues of discovery and subpoenas, the court dismissed the action with prejudice. On reconsideration, however, the court questioned whether the *Jass* dictum cited above was still good law and reinstated the claimant's action against Hartford. *Id.* at *3. In so ruling, the court cited Judge Reinhardt's dissent in *Everhart* which pointed out that there is no statutory language that limits the parties that may be sued to plans and administrators, or prohibits suits against third party insurers. The *Penrose* court found his reasoning persuasive. It also noted that in the vast majority of cases that applied the *Jass* holding, the plan was already a defendant or the court granted leave to join the plan, "thus rendering superfluous claims against other defendants." 2003 WL 21801214 at *2. But where, as in the case before it, the plan and plan administrator could not be identified and the insurer both funded the plan and had the final word on whether claims would be paid, the court concluded that the insurer was a proper defendant:

> It is plain enough in light of the ameliatory purposes of ERISA, the court of appeals is unlikely to hold the where the employer and/or administrator have failed to create or identify an entity known as a plan which can be sued, then a plaintiff is without a remedy in a suit

to recover benefits. It is hardly debatable that the Congressional purpose behind § 1132(a)(2)(B) was, at the least, that a party legally responsible for paying benefits governed by ERISA is a party that can be sued..... Here, it appears that Hartford not only has the final word on whether a claim for benefits will be paid to a beneficiary but also is the party that funds the plan. Absent any evidence that a plan entity exists, the court finds that Hartford is a proper defendant in a claim to recover benefits under the plan.

2003 WL 21801214, at *3.

 Turning to this case, NHP contends it is neither the plan nor the plan administrator for the American Tissue Mills employee welfare benefit plan. But while it seems apparent that NHP is not the plan, it is not clear from the record before me that NHP is not the plan administrator. The Declaration of its Chief Operating Officer is silent on the issue, and the documents attached to the Declaration of John Wesley Warren indicate on their face that they relate to a plan which has an effective date of November 15, 2001, some six months after the accident out of which plaintiff's claim for benefits arises. This evidence is insufficient to overcome the allegation in plaintiff's amended complaint that NHP is "both the plan and the plan administrator for these subscribers" (Am. Compl.¶ 12.), an allegation that has some support in the certificate of coverage attached to plaintiff's amended complaint which names NHP as the "plan administrator or issuer responsible for providing this certificate."

As in *Penrose*, the plaintiff in this case apparently has so far been unable to obtain copies of the documents that identify the plan that was in effect at the time her claim arose, and the administrator of that plan. And also as in *Penrose*, it appears

that the insurer, in this case NHP, had sole responsibility for determining which claims to pay and for paying them. (Am. Compl. ¶¶ 24, 27, Tab C.) Under these circumstances, I am unable to conclude that NHP is not a proper defendant even under the complaint now before me.

■ Nor am I convinced that plaintiff's claim should be dismissed for failure to join an indispensable party under Fed. R.Civ.P. 19. Rule 19 provides that a person shall be joined to an action, if feasible, "if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the parties who are already parties subject to a substantial risk of incurring double, multiple, or other otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a). NHP contends that plaintiff has failed to name either the plan or plan administrator and for this reason as well, her action should be dismissed.

On the record before me, however, I am unable to determine if the plan or any other party is necessary for complete relief to be accorded among those who are already parties. Plaintiff's claim is essentially that NHP has failed to provide the benefits that are set forth in the certificate of coverage under which it agreed to insure the covered members of the group and their beneficiaries. Although it is true that NHP is providing those benefits under an ERISA plan, it appears that NHP, and not the plan, is the party that decides what claims to pay and it is the party that actually pays. Thus, I am unable to say why the plan is necessary to a full and fair disposition of the matter.

I also note that the identity of the plan in effect at the time plaintiff's claim arose is still not clear. As explained above, the documents plaintiff received in response to her subpoena relate to an employee welfare benefit plan with an effective date of November 15, 2001, some six months after plaintiff's claim arose. Under these circumstances and absent more persuasive authority than has been offered, I decline to dismiss plaintiff's claim for failure to join an indispensable party. I thus conclude that NHP's motion for summary judgment should be denied, and I now turn to plaintiff's motion for leave to file a second amended complaint.

**2. Motion To File Amended Complaint**

■ In her proposed second amended complaint, plaintiff purports to abandon her claim that NHP is liable under § 1132(a)(1)(B) as the Plan itself or Plan Administrator, and instead seeks to impose liability on NHP under § 1132(a)(3) for breach of fiduciary duty. NHP strongly opposes plaintiff's motion to file an amended complaint at this stage of the proceedings, claiming that she delayed too long in doing so, her new complaint also fails to state a valid claim, and that she has still failed to name the Plan as a necessary party.

I share NHP's frustration that this case has been bogged down from its inception on an issue that in any rational system should be resolvable with a phone call and a fax. But rather than attribute the confusion and resulting delay to plaintiff or her counsel, I conclude it is a result of the lack of clarity in ERISA itself and the cases interpreting it over who can be named as a defendant in a suit for benefits, the confusing and misleading documentation apparently given to employees regarding their benefits, and the subsequent bankruptcy filed by American Tissue, Inc., followed by

its sale of the mill where plaintiff's father was employed. All of these factors seem to have combined to create a cloud of confusion over the question of who should be required to respond to plaintiff's claim.

Given my ruling on NHP's motion for summary judgment on plaintiff's amended complaint, I also conclude that NHP would suffer no prejudice if plaintiff's motion for leave to file a second amended complaint was granted. As plaintiff points out, the basic claim against NHP remains the same as it has been from the beginning. The only change is that plaintiff now claims that NHP acted as a fiduciary under the plan and is requesting relief under § 1132(a)(3), as opposed to § 1132(a)(1)(B), a possible interpretation I noted under the previous complaint. Despite the length of time the case has been pending, it remains in the early stages in terms of discovery and scheduling. In fact, plaintiff filed her motion within the time allowed for amendment of pleadings under the scheduling order entered by the court. And while it must be acknowledged that here, too, the law is less than clear on the issue, I conclude that plaintiff's second amended complaint does state a claim.

NHP argues that the Supreme Court's decision in *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), and the Seventh Circuit's recent decision in *Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723 (7th Cir.2003), preclude any finding that an HMO could be considered a fiduciary for ERISA purposes. But NHP reads these decisions too broadly. *Pegram* explicitly acknowledged that a HMO can be a fiduciary in cases where it administers the plan. 530 U.S. at 223, 120 S.Ct. 2143. The Court held in *Pegram* that an HMO doctor's decision that a patient's condition did not require immediate attention was a mixed eligibility and treatment decision, and thus was not a fiduciary decision within the meaning of

ERISA. At the same time, however, the Court suggested that what it characterized as pure eligibility decisions were fiduciary decisions that, when made by an HMO, would be actionable under ERISA. *Id.* at 227–30, 120 S.Ct. 2143. Pure eligibility decisions, *Pegram* stated, "turn on the plan's coverage of a particular condition or medical procedure of its treatment." *Id.* at 228, 120 S.Ct. 2143. They include the administrative determinations "such as whether a plan covers an undisputed case of appendicitis." *Id.* at 230, 120 S.Ct. 2143.

*Wallace v. Reliance Standard Life Ins. Co.* is consistent with this interpretation. In *Wallace*, the plaintiff sued his employer-provided disability insurer under § 1132(a)(1)(B) when it cut off his benefits. The district court made a *de novo* determination that the medical evidence demonstrated that the plaintiff was no longer disabled and granted summary judgment on that basis. On appeal, the plaintiff did not challenge the district court's assessment of the medical evidence, but instead claimed that as a fiduciary, the insurer was required to obtain additional medical evaluations, which then should have been submitted to an independent physician for assessment. 318 F.3d at 723–24. The Seventh Circuit rejected plaintiff's argument, noting that *Pegram* held "a health maintenance organization ... is not an ERISA fiduciary to the extent that it makes decisions about the nature of the care required under the contract." *Id.* at 724.

Thus, *Wallace* and *Pegram* stand for the same principle, namely, that an HMO will not be deemed an ERISA fiduciary when the actions or omissions challenged involve treatment decisions or mixed treatment/administrative decisions. By negative implication, therefore, an HMO *can* be an ERISA fiduciary if the action in ques-

tion involved one of the sorts of "pure 'eligibility decisions'" discussed by the court in *Pegram*, 530 U.S. at 228, 120 S.Ct. 2143. These sorts of decisions do not open the floodgates to entangling federal ERISA law in state law malpractice claims, as the Supreme Court feared would happen when a decision involved a physician's medical judgment. *Id.* at 236–37, 120 S.Ct. 2143. This much was made explicit by the court, which noted that "although Carle is not an ERISA fiduciary merely because it administers or exercises discretionary authority over its own HMO business, it may still be a fiduciary if it administers the plan." *Id.* at 223, 120 S.Ct. 2143. (When the court discusses administration of the plan in this context, it is not limiting the term to the plan's named administrator, who may or may not have any actual involvement with the plan's administration.) Thus, NHP's insistence that HMOs are *per se* non-fiduciaries is clearly misplaced.

The decisions at issue here involved the purely administrative action of denying Rivera's claims for chiropractic care because they were related to Rivera's motor vehicle accident. Under a contract with NHP, the chiropractor had subrogation rights in any recovery, and therefore NHP would not pay the chiropractor for the services rendered because the chiropractor could presumably recover his fees elsewhere. Thus, the decision to deny the claims was not made for medical reasons but for administrative and financial reasons. Nor is there any indication that any physicians or medical staff were involved in the decision to deny Rivera's claims-indeed, the letter from NHP to plaintiff's counsel was written by a "Subrogation Coordinator" from NHP. (Compl., Tab C.) Accordingly, the denial of Rivera's claims was not a treatment decision, nor even a mixed treatment/administrative decision. NHP simply stated that the claims were denied because they were related to a motor vehicle accident. (*Id.*) Thus, under *Pegram* and other more recent appellate opinions, NHP could be deemed to have acted as a fiduciary when it processed Rivera's claims for benefits. *See Marks v. Watters*, 322 F.3d 316, 324–25 (4th Cir. 2003)(HMO acts as ERISA fiduciary when making pure eligibility decisions); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir.2001)(HMO's delays due to assertions of non-coverage raised questions regarding administration of benefits rather than treatment or mixed determinations).

Accordingly, because I do not find that prejudice to NHP would result from amendment of the complaint, and because I do not find that such amendment would be futile, the motion to amend is granted, although I also note that, given my ruling on NHP's motion for summary judgment, plaintiff may wish to rethink her decision to abandon her claim that NHP is liable as a plan administrator. In any event, the clerk is directed to contact counsel for the parties to schedule a status conference at which the future scheduling of this case will be determined as well as the status of the claims brought in the plaintiff's amended complaint.

For the reasons given herein, **IT IS ORDERED THAT** the defendant's motion for summary judgment is **DENIED** and the plaintiff's motion to amend is **GRANTED**.